UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HARBORVIEW MASTER FUND, LP,

                PLAINTIFF,

    -AGAINST-

LIGHTPATH TECHNOLOGIES, INC.,

KENNETH BRIZEL AND ROBERT RIPP,

              DEFENDANTS.

---

CIVIL ACTION NO. 07 CIV. 09228 (NRB)

 

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**BAKER & HOSTETLER LLP**
Ona T. Wang (OW-5462)
Benjamin Pergament (admission pending)
Rebecca S.T. Khalil (New York state
admission pending)
45 Rockefeller Plaza
New York, New York 10111
(212) 589-4200
(212) 589-4201 (fax)

December 21, 2007           *Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT ......................................................................................................................... 4

I.  PLAINTIFF'S SECURITIES FRAUD CLAIM(S) MUST BE DISMISSED
    FOR FAILURE TO STATE A CLAIM AND FOR FAILURE TO PLEAD
    WITH PARTICULARITY ............................................................................................. 4

    A.  Brizel's statements on June 29, 2007 were not misleading and are not
    actionable ................................................................................................................... 7

    B.  Alleged omissions before July 26 cannot form the basis of a securities
    fraud claim ................................................................................................................. 9

    C.  Plaintiff's conclusory allegations of scienter are also insufficient ..................... 10

II. IN ADDITION TO FAILING TO PLEAD A PRIMARY VIOLATION,
    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(a)
    BECAUSE IT  FAILS TO PLEAD CONTROL OF THE PRIMARY
    VIOLATOR AND  CULPABLE PARTICIPATION ..................................................... 14

    A.  Harborview has failed to plead control of LightPath by Ripp ............................ 14

    B.  Harborview has failed to plead any culpable participation by Ripp .................. 16

III.  PLAINTIFF'S COMMON LAW FRAUD CLAIM SHOULD BE DISMISSED ...... 17

IV.  PLAINTIFF CANNOT STATE A CLAIM FOR NEGLIGENT
     MISREPRESENTATION ........................................................................................... 18

V.  PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF WARRANTY ........ 19

CONCLUSION ..................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk;* 291 F.3d 336 (5th Cir. 2002)...................................21

*Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328 (2d Cir. 2006)...............................20

*Acito v. IMCERA Group,* 47 F.3d 47 (2d Cir. 1995) .............................................................6, 11

*Adair v. Kaye Kotts Associates, Inc.,*
No. 97 Civ. 3375 (SS), 1998 WL 142353 (S.D.N.Y. Mar. 27, 1998) ..........................................9

*ATSI Comm'ns, Inc. v. The Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007) ....................................6

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007) ...........................................................4

*Burstyn v Worldwide Xceed Group, Inc.,*
No. 01 Civ. 1125 (GEL), 2002 WL 31191741 (S.D.N.Y. Sept. 30, 2002)...................................5

*Castellano v. Young & Rubicam, Inc.,* 257 F.3d 171 (2d Cir. 2001)...........................................18

*Chill v. General Elec. Co.,* 101 F.3d 263 (2d Cir. 1996) ...........................................................11

*Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42 (2d Cir. 1991) .........................................2

*CPC International Inc. v. McKesson Corporation,* 70 N.Y.2d 268 (1987),................................18

*Decker v. Massey-Ferguson,* 681 F.2d 111 .............................................................................11

*Denny v. Barber,* 576 F.2d 465 (2d Cir. 1978)........................................................................13

*Dover Ltd. v. A.B. Watley, Inc.,* 423 F. Supp. 2d 303 (S.D.N.Y. 2006) ................................17, 19

*Ernst and Ernst v. Hochfelder,* 425 U.S. 185 (1976)............................................................5, 17

*Fadem v. Ford Motor Co.,* 352 F. Supp. 2d 501 (S.D.N.Y. 2005)...........................................13

*Gabriel Capital, L.P. v. NatWest Fin., Inc.,* 137 F. Supp. 2d 251 (S.D.N.Y. 2000) ...................19

*Ganino v. Citizens Utils. Co.,* 228 F.3d 154 (2d Cir. 2000) .................................................5, 6

*Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir. 1995) ............................................15

*In re Alstom SA Sec. Litig.,* 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ......................................14, 16

*In re Bayou Hedge Fund Litig.,* Nos. 06-MDL-1755 (CM),
06-CV-2943 (CM), 2007 WL 2319127 (S.D.N.Y. July 31, 2007) ............................................19

*In re Carter-Wallace, Inc. Sec. Litig.,* 220 F.3d 36 (2d Cir. 2000).......................................6, 11

*In re Global Crossing Ltd. Sec. Litig.,*
02 Civ. 910 (GEL), 2005 WL 1875455 (S.D.N.Y. Aug. 5, 2005)............................................14

*In re Openwave Sys. Sec. Litig.,*
No. 07 Civ. 1309 (DLC), 2007 WL 3224584 (Oct. 31, 2007).................................................13

*In re Philip Serv. Corp. Sec. Litig.,* 383 F. Supp. 2d 463 (S.D.N.Y. 2004)...............................14

*In re Regeneron Pharm.,*
03 Civ. 3111 (RWS), 2005 WL 225288 (S.D.N.Y. Feb. 1, 2005)............................................13

*In re Salomon Analyst Winstar Litig.,*
02 Civ. 6171 (GEL), 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006)...........................................11

*In re Scholastic Corp. Sec. Litig.,* 252 F.3d 63 (2d Cir. 2001) ................................................9

*Jenkins v. McKeithen,* 395 U.S. 411 (1969) ............................................................................4

*Kalnit v. Eichler,* 264 F.3d 131 (2d Cir. 2001) ..............................................................5, 6, 11

*Kramer v. W10Z/515 Real Estate Ltd. P'ship,* 844 N.Y.S.2d 18 (2007) ....................................18

*Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir. 1973) ............................................................17

*Lapin v. Goldman Sachs,* 506 F. Supp. 2d 221 (S.D.N.Y. 2006) ...........................................14

*LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortgage Lending,*
No. 04 Civ. 5452 (PKL), 2007 WL 2324052 (S.D.N.Y. Aug. 13, 2007). ..................................20

## TABLE OF AUTHORITIES

**Page(s)**

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir.1993)...........................................................5

*Mishkin v. Ageloff*,
No. 97 Civ. 2690 (LAP), 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998)...................................16

*Morse v. Weingarten*, 777 F. Supp. 312 (S.D.N.Y. 1991)............................................................18

*Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC*,
No. 02 Civ. 0767 (LBS), 2004 WL 2754653 (S.D.N.Y. 2004)..................................................19

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) .............................................................10, 11, 12

*Pilarczyk v. Morrison Knudsen Corp.*, 965 F. Supp. 311 (N.D.N.Y. 1997)..............................17

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)..........................................................................9

*Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315 (S.D.N.Y. 1999)...........................................15

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996)...........................................................................................8, 11, 12

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996)..............................................14, 16

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir.1994) .........................................5, 11, 12

*Steed Finance LDC v. Nomura Secs. Int'l, Inc.*,
No. 00 CIV 8058 (NRB), 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001)................................16

*Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 127 S.Ct. 2499 (2007) ............................11, 12

*United States ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*,
451 F. Supp. 2d 613 (S.D.N.Y. 2006).......................................................................................5

*United States ex rel. Woods v. Empire Blue Cross and Blue Shield*,
No. 99 Civ. 4968 (DC), 2002 WL 1905899 (S.D.N.Y. Aug. 19, 2002)......................................5

*Whitehall Tenants Corp. v. Estate of Olnick*, 623 N.Y.S.2d 585 (1995).....................................18

*Xerion Partners I LLC v. Resurgence Asset Mgmt.*,
474 F. Supp. 2d 505 (S.D.N.Y. 2007)........................................................................5, 6, 8, 9, 10

**Other Authorities**

15 U.S.C. §78j(b),.......................................................................................................................4

15 U.S.C. §78u-4(b)(1) .........................................................................................................5, 6, 9

15 U.S.C. §78u-4(b)(2) ..............................................................................................................10

N.Y. Gen. Bus. Law § 352-c........................................................................................................18

**Rules**

17 C.F.R. §240.10b-5(b)...............................................................................................................4

Fed. R. Civ. P. 9(b) ...............................................................................................................5, 18

## PRELIMINARY STATEMENT

This is a classic case of fraud by hindsight.  Plaintiff, a sophisticated investor, seeks to rescind its investment on the sole basis of a public announcement made nearly two months after it invested in LightPath's private placement.  Plaintiff's complaint, larded with conclusory allegations, pleads no facts to support its allegations that statements made by LightPath prior to the closing were false or materially misleading.  Instead, Plaintiff would hold LightPath, its former CEO, and current Chairman liable for failing to report fourth fiscal quarter results *before* the quarter had come to a close and for failing to announce the termination of its CEO *nearly three months before* the end of his employment.  Courts in this Circuit have consistently dismissed actions such as this, correctly concluding that defendants are not required to be clairvoyant.

As more fully set forth below, Plaintiff's complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

Plaintiff's claims arise from a private placement in which Harborview Master Fund, LP ("Harborview" or "Plaintiff") purchased 125,000 shares of common stock at $4.00 per share from Defendant LightPath Technologies, Inc. ("LightPath") and received warrants to purchase an additional 37,500 shares of LightPath common stock at $5.50 per share.  (Compl. ¶ 11).  In the Securities Purchase Agreement, LightPath warranted that "[s]ince the date of the latest audited financial statements included within the SEC Reports . . . there has been no event, occurrence or development that has had or that could reasonably be expected to result in a

Material Adverse Effect." (Compl. ¶ 23 and Wang Decl. Ex. 1 at 3.1(i)).[1] "Material Adverse

Effect" is defined to include "a material adverse effect on the results of operations, assets,

business or condition (financial or otherwise) of [LightPath and its subsidiaries] . . . *taken as a*

*whole.* (Compl. ¶ 24 and Wang Decl. Ex. 1 at 3.1(b)(ii)). (emphasis added). The private

placement closed on July 26, 2007.[2] (Compl. ¶ 11).

On September 19, 2007, LightPath issued a press release which included projected results

for the fourth quarter of fiscal year 2007, ending June 30, 2007 ("4Q07"). (Compl. ¶ 13 and

Wang Decl. Ex. 2). This press release indicated a reduction in sales as compared to the fourth

quarter of the previous fiscal year and disclosed the reasons for the revenue decline. (Compl.

¶¶ 13-14, Wang Decl. Ex. 2). The reduction in sales was attributed, in part, to a reduced volume

of new orders from telecommunications customers as a result of market conditions. (See Wang

Decl. Ex. 2). The press release also announced that LightPath's CEO, Kenneth Brizel ("Brizel"),

had ended his employment with LightPath effective September 18, 2007. *Id.*

In addition to the projected decline in fourth quarter revenues, and notably absent from

Plaintiff's complaint, the September 19, 2007 press release reported a 10% overall *increase* in

2007 sales, as compared to the 2006 sales figures. (See Wang Decl. Ex. 2). The press release

also announced that Jim Gaynor, Senior Vice President of Global Operations, had been

---

[1] *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) ("[W]hen a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC," even where plaintiff chooses not to attach such documents to complaint, if those documents are "integral to the complaint;" defendant may attach such documents without converting a 12(b)(6) motion to a summary judgment motion).

[2] LightPath issued a press release on July 26, 2007 announcing the private placement and discussing LightPath's future, stating that the capital raised through the private placement "will provide additional resources for manufacturing expansion and developments with the necessary working capital to accomplish our objectives." (Compl. ¶ 12). In the press release, Kenneth Brizel, LightPath's CEO, acknowledged the role of the private placement investors in improving LightPath's business, adding that "[w]e continue to be optimistic that our future results will confirm the confidence in our prospects that this investment demonstrates." *Id.*

appointed interim CEO during LightPath's search for a permanent replacement for Brizel after his "mutually beneficial" departure from the company. *Id.*

In its action for damages and rescission of the July 26 private placement, Harborview claims, in essence, that LightPath and Brizel "knew or should have known," before July 26, the information disclosed in the September 19 press release. (Compl. ¶ 25(b)). According to Harborview, positive statements made by Brizel on a conference call on June 29, and LightPath's failure to update that information before July 26 result in liability for LightPath, Brizel, and Robert Ripp ("Ripp"), LightPath's Chairman. Specifically, on June 29, 2007, one day before the close of LightPath's fiscal fourth quarter, Brizel participated in a conference call with Harborview representatives to discuss Harborview's potential investment in LightPath.[3] (Compl. ¶ 9). In this call, Brizel "touted LightPath's products, markets, and technology" and informed the Harborview representatives that "the company was performing well, and that sales and profitability were on the rise." *Id.* With respect to the proceeds from the private placement, Brizel told Harborview that the funds would be used "predominantly to further expand the expansion [sic] of the company's manufacturing capabilities in its Shanghai location." *Id.* On the June 29 call, Brizel did not specifically discuss 4Q07 results, nor did he indicate that he intended to leave LightPath. The first time the public was told of LightPath's 4Q07 projections and Brizel's departure was in the September 19 press release,[4] almost two months after

---

[3] Harborview also appears to allege that Brizel participated in a conference call with Harborview on September 18. (Compl. ¶36). This allegation is likely in error and was intended to reference Brizel's call on June 29, as Plaintiff alleges in the same paragraph that "the conference call was conducted two (2) days prior to the close of [LightPath's] . . . fourth fiscal quarter." *Id.* Moreover, given that Brizel's employment terminated effective September 18, it is highly unlikely that he had a conference call with Harborview on his last day.

[4] Harborview alleges that Robert Ripp, ("Ripp"), Chairman of the Board of Directors of LightPath, participated in a telephone conference with a Harborview representative on or around September 18, 2007. According to Harborview, during this telephone conference, Ripp allegedly told a Harborview representative that he believed Brizel was responsible for LightPath's 4Q07 performance, (Compl.

Harborview's investment and almost three months after Brizel's June 29 conference call.  The Complaint does not allege any facts to suggest that either LightPath or Brizel knew LightPath's 4Q07 results (or, for that matter, that Brizel would be leaving LightPath on September 18) at any time before July 26.

## ARGUMENT

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must "liberally construe[]" the complaint in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  The Court is to assume that "all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  Accordingly, while Defendants disagree vigorously with many of the "facts" and characterizations alleged by Plaintiffs, Defendants accept those allegations as true for the limited purpose of this motion.

**I.**    <u>PLAINTIFF'S SECURITIES FRAUD CLAIM(S) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AND FOR FAILURE TO PLEAD WITH PARTICULARITY</u>

Plaintiff's Third, Fourth, Fifth and Sixth Causes of Action seek damages and rescission for Brizel's and LightPath's alleged violation of §10(b) of the Securities ad Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. §240.10b-5(b).  Under Rule 10b-5(b), it is

> [u]nlawful for any person, directly or indirectly . . . (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security.
> 17 C.F.R. §240.10b-5.

---

¶25(b)), and told Harborview that he was "leading the efforts to terminate" Brizel.  (Compl. ¶ 72).  Ripp, however, denies these allegations.

In order to state a claim under Rule 10b-5(b), Harborview must plead that Brizel and LightPath, "in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter." *Burstyn v Worldwide Xceed Group, Inc.*, No. 01 Civ. 1125 (GEL), 2002 WL 31191741, at *4 (S.D.N.Y. Sept. 30, 2002) (emphasis omitted) (*quoting Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000)) Scienter is defined as "an intent to deceive, manipulate or defraud." *Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976); *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001).

Securities fraud claims under Rule 10b-5 are subject to the heightened pleading requirement of Rule 9(b) that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). Moreover, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(b)(1), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (*quoting Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). "In short, a plaintiff must 'set forth the who, what, when, where and how of the alleged fraud.'" *United States ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 623 (S.D.N.Y. 2006) (*quoting United States ex rel. Woods v. Empire Blue Cross and Blue Shield*, No. 99 Civ. 4968 (DC), 2002 WL 1905899, at *4 (S.D.N.Y. Aug. 19, 2002) (citation omitted)); *Xerion Partners I LLC v. Resurgence Asset Mgmt.*, 474 F. Supp. 2d 505, 516 (S.D.N.Y. 2007). Moreover, the PSLRA requires that, for each statement alleged to be misleading, plaintiffs must specify "the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all

facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see also ATSI Comm'ns, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); Xerion *Partners I*, 474 F. Supp. 2d at 516. "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Comm'ns*, 493 F.3d at 99; *see also In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 40 (2d Cir. 2000) ("'[C]onclusory allegations' do not satisfy pleading requirements of Rule 9(b).").

In order to plead scienter, Rule 9(b) and the PSLRA also require plaintiffs to "allege facts giving rise to a strong inference of fraudulent intent, either by alleging facts (1) showing that defendants had both motive and opportunity to commit fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Xerion Partners I*, 474 F. Supp. 2d at 517 (*citing Acito v. IMCERA Group*, 47 F.3d 47, 52 (2d Cir. 1995) (internal citations omitted)). "General allegations that the defendants acted in their economic self-interest" or "[m]otives that are generally possessed by most corporate directors and officers" are not enough to adequately plead motive and opportunity. *Id.* (*citing Ganino,* 228 F.3d at 170 and *Kalnit,* 264 F.3d at 139).

Here, Harborview is unable to plead with particularity any material misstatement or omission which LightPath or Brizel had a duty to disclose, nor can it plead the requisite scienter. Harborview points to several statements or omissions made during a June 29, 2007 conference call which purport to be false statements or omissions of material fact. The crux of Harborview's claims, however, appears to be a classic fraud by hindsight: namely, that LightPath should have known as early as June 29, 2007 the facts it disclosed in the September 18, 2007 press release. Specifically, Plaintiff claims that Brizel "touted LP's products, markets and technology" and "represented that the company was performing well, and that sales and profitability were on the rise;" and that the proceeds of the private placement would be used to

further LightPath's Shanghai expansion. Plaintiff also claims, "upon information and belief,"

that before the closing of the private placement, LightPath failed to disclose certain facts about

its 4Q07 performance and alleged plans to terminate Brizel on the basis of that 4Q07

performance. However, Plaintiff has failed to plead any facts to suggest that LightPath knew or

could have known its 4Q07 performance before the end of the quarter, or that LightPath intended

to terminate Brizel on that basis. Moreover, there is no indication that LightPath had any duty to

disclose these facts before it issued the September 18, 2007 press release.

As discussed more fully below, each of these purported statements or omissions is not

actionable, and Plaintiff's securities fraud claims at its Third, Fourth, Fifth and Sixth Causes of

Action must be dismissed with prejudice.

**A.    <u>Brizel's statements on June 29, 2007 were not misleading and are not actionable</u>**

Plaintiff describes several statements made by Brizel during a June 29, 2007 conference

call. For the reasons set forth below, none of these statements is actionable.

Plaintiff claims that Brizel "touted LightPath's products, markets and technology, and

represented to Harborview that the company was performing well, and that sales and profitability

were on the rise," and that proceeds of the private placement "would be used predominantly to

further expand the expansion [sic] of the company's manufacturing capabilities in its Shanghai

location." Compl. ¶ 9.

Brizel's statements are not actionable and were not misleading at the time they were

made.[5] "[T]out[ing] LightPath's products, markets and technology, and represent[ing] to

Harborview that the company was performing well, and that sales and profitability were on the

---

[5] Brizel's statement regarding LightPath's Shanghai expansion and the use of funds cannot support a
securities fraud claim because Plaintiff has not alleged that any portion of this statement was false or
misleading.

rise," is simply too general to form the basis of a 10b-5 action, and Harborview has not stated

how these statements were materially misleading at the time they were made. At best, the

statements reflected the company's optimism at the time, or corporate "puffery," which cannot

form the basis of a 10b-5 claim. *San Leandro Emergency Med. Group Profit Sharing Plan v.*

*Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996) (corporate puffery not actionable under

federal or state law). Rule 9(b) requires that the plaintiff specify the purportedly misleading

statement and state how it was materially misleading. A vague statement expressing optimism or

a positive belief in the company's products is classic commercial puffery and is not actionable.

*Id.* at 811 ("general announcements" by a company that it was optimistic about economic future

and expected its product to perform well were puffery and "cannot constitute actionable

statements under the securities laws"). Even statements that express optimism about current and

future economic growth are too general to be actionable. *Id.* at 806, 810-11 (statements that

company was "optimistic" about current year, business was "strong and growing" and "doing

quite well within the competitive environment" were too general to support a securities fraud

claim). As in *San Leandro*, Brizel's statement "that sales and profitability were on the rise," – a

generic statement of economic optimism – is too general to support a securities fraud claim.

Indeed, Harborview has failed to identify how Brizel's statements were misleading at the

time they were made. Harborview makes much of the fact that 4Q07 sales were lower than

4Q06 sales, but ignores the fact that fiscal year 2007 sales *increased* over fiscal year 2006. Even

if one were to assume that Brizel meant to limit his remarks in the June 29 call to 4Q07 sales

alone, "allegations that statements in one report should have been made in earlier reports do not

make out a claim of securities fraud." *Xerion Partners I*, 474 F. Supp. 2d at 517 (citations

omitted). Such inconsistencies (if they exist) do not make the earlier statements false at the time

they were made unless a plaintiff is able to specify the conflicting, earlier reports that provided the information, specify who prepared these reports and when, and specify how firm the numbers were or which company officers reviewed the numbers.[6] *Id.* (*citing In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001)). This Harborview has failed to do.

**B.     Alleged omissions before July 26 cannot form the basis of a securities fraud claim**

Plaintiff also appears to allege that LightPath made two material omissions before the private placement on July 26: first, that LightPath knew and failed to disclose its 4Q07 results, and second, that LightPath had decided to terminate Brizel for cause based on those results. Both of these alleged "omissions," supported only by conclusory allegations, are wholly dependent on a finding that LightPath knew and had a duty to disclose its 4Q07 results less than one month before the quarter's end, and must also fail under the particularity requirement of Rule 9(b).

In order for an omission to form the basis of a 10b-5 claim, the omission must be material, and there must have been a duty to disclose. *Adair v. Kaye Kotts Associates, Inc.*, No. 97 Civ. 3375 (SS), 1998 WL 142353, at *8 (S.D.N.Y. Mar. 27, 1998). Moreover, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts upon which the belief is formed." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (*quoting* 15 U.S.C. § 78u-4(b)(1)).

As discussed above, not only has Plaintiff utterly failed to allege facts to suggest that LightPath knew its 4Q07 results by July 26, 2007, less than a month after the close of the

---

[6] It is also unlikely that either "misrepresentation" relied upon by Harborview – 4Q07 results or Brizel's departure, even if they were known before July 26 – is material. Although LightPath's 4Q07 sales were lower than sales in the same quarter in the previous year, the company still finished the fiscal year with higher sales than the previous year. Moreover, Harborview has not alleged that the interim replacement for Brizel, Jim Gaynor, LightPath's Senior Vice President, Global Operations, was an inadequate candidate for interim CEO or not qualified to act as CEO.

quarter, but Plaintiff has also failed to plead any facts to suggest that even if LightPath had

known its 4Q07 results internally, it was engaged in deliberations to terminate its CEO on the

basis of those results.  Indeed, the September 19 press release – upon which Plaintiff relies so

heavily as backward-looking 'evidence' that Brizel's statements in June were false – suggests

just the opposite: on its face, it states that Brizel left without cause and that his termination was

effective on September 18.  Plaintiff has made only conclusory allegations that Defendants knew

or should have known LightPath's 4Q07 results before July 26, and such unsupported general

claims that LightPath had different information before July 26 are insufficient to survive a

motion to dismiss.  *See Xerion Partners I*, 474 F. Supp. 2d 505 (S.D.N.Y. 2007) (dismissing

securities fraud claims as "fraud by hindsight" where reports, issued after closing of private

placement, provided less positive information than projections given to plaintiff in connection

with private placement); *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (corporate officials

only responsible for revealing those material facts reasonably available to them; allegations that

defendant should have anticipated future events and made disclosures earlier than they actually

did do not suffice to make out a claim of securities fraud).  In *Xerion Partners I*, the Court noted

that a conclusory allegation that earlier financials were fraudulently inflated because a later

report provided a lower number is insufficient to withstand a motion to dismiss.  474 F. Supp.2d

at 518 ("Xerion has not alleged a single fact to support its claim that the EBITDA number was

inflated - instead, it has simply concluded that it was.")  Harborview's conclusory allegations,

wholly devoid of facts, similarly cannot withstand a motion to dismiss.

      **C.**      **Plaintiff's conclusory allegations of scienter are also insufficient.**

      Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of mind."  15 U.S.C. §78u-4(b)(2).  In

order to plead scienter in a Rule 10b-5 claim, a plaintiff must allege facts that "give rise to a

strong inference of fraudulent intent." *Novak*, 216 F.3d at 307.  The Supreme Court has cited

with approval the Second Circuit's determination that the 'strong inference' standard for scienter

was "appropriate . . . to ward off allegations of 'fraud by hindsight.'" *Tellabs, Inc. v. Makor*

*Issues and Rights, Ltd.*, 127 S.Ct. 2499, 2508 (2007) (*citing Shields*, 25 F.3d at 1129).  The

Second Circuit has repeatedly held that securities fraud defendants cannot be expected to be

clairvoyant, and dismissed claims including mere conclusory allegations of scienter.  *See Acito*,

47 F.3d at 53 ("defendants' lack of clairvoyance simply does not constitute securities fraud");

*San Leandro*, 75 F.3d at 812 (dismissing claim where plaintiffs offered only "conclusory

allegations to support their contention" that defendant knew or should have known different facts

prior to public statement); *Decker v. Massey-Ferguson*, 681 F.2d 111 at 117 ("[E]conomic

prognostication, though faulty, does not, without more, amount to securities fraud.");  *In re*

*Carter-Wallace*, 220 F.3d at 40 (appellants "must provide 'at least a minimal factual basis for

their allegations of scienter'" (*quoting Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir.

1996) (internal quotation marks omitted)).

A plaintiff may establish the requisite "strong inference" either "(a) by alleging facts to

show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts

that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit*,

264 F.3d at 138; *In re Salomon Analyst Winstar Litig.*, 02 Civ. 6171 (GEL), 2006 WL 510526, at

*7 (S.D.N.Y. Feb. 28, 2006).  Here, plaintiff has done neither; indeed, Plaintiff has failed to state

with particularity *any* facts that could give rise to a strong inference of fraudulent intent.

Under *Tellabs*, courts now "*must consider plausible nonculpable explanations* for the

defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 127 S.Ct. at 2510

(emphasis added).  "A complaint will survive, we hold, only if a reasonable person would deem

the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* Here, Plaintiff makes the conclusory allegation that Brizel "knew or should have known" LightPath's 4Q07 results two days before the quarter had even ended, and that less than a month after the quarter's close, LightPath had analyzed its 4Q07 results, *and* determined that it would terminate Brizel *and* made a decision to hide that fact for two more months. (Compl. ¶¶ 25(b), 36). In contrast, a more plausible nonculpable explanation for defendant's conduct can be found in LightPath's September 19 press release: LightPath released its projected 4Q07 numbers on September 19, shortly after they were known; additionally, Brizel and LightPath determined – in September, not July – that effective September 18, 2007, Brizel was no longer employed by LightPath.

Plaintiff also fails to plead any facts showing that Brizel had any motive or opportunity to commit fraud.[7] Brizel's purported "motive" for committing fraud "was to raise necessary capital for LightPath," and he allegedly had the opportunity to do so "as LightPath's Chief Executive Officer." (Compl. ¶ 39). The Second Circuit has held that allegations of "[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Novak*, 216 F.3d at 307 (*quoting Shields*, 25 F.3d at 1130). Moreover, "motives possessed by virtually all corporate insiders," including "the appearance of profitability" or "the desire to maintain a high stock price in order to increase executive compensation" cannot be relied on to establish scienter. *Id.* at 307-308 (citations omitted). Otherwise, "virtually every company in the United States that experiences a downturn in stock price would be forced to defend securities fraud actions." *San Leandro*, 75 F.3d at 814. Moreover, desiring to further corporate transactions to raise capital, such as the private

---

[7] Plaintiff apparently bases its scienter pleading on motive and opportunity, and has not alleged conscious misbehavior or recklessness by any defendant.

placement here, cannot support a motive and opportunity to commit fraud. *In re Regeneron Pharm.*, 03 Civ. 3111 (RWS), 2005 WL 225288, at *23 (S.D.N.Y. Feb. 1, 2005). Similarly, the position of CEO itself, without more, is an insufficient basis for finding an opportunity to commit fraud. *See In re Openwave Sys. Sec. Litig.*, No. 07 Civ. 1309 (DLC), 2007 WL 3224584, at *12 (S.D.N.Y. Oct. 31, 2007) ([P]laintiff has failed to plead any motive or opportunity to commit the alleged fraud that is particular to Peterschmidt, and not simply incident to his role as president, CEO, or director."); *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 524 (S.D.N.Y. 2005) (requiring plaintiff to show that CEO received some concrete benefit from the alleged fraud to establish motive and opportunity).

As discussed above, Plaintiff's Third, Fourth, Fifth and Sixth Causes of Action should be dismissed. Essentially, Plaintiff claims – with no support whatsoever – that LightPath's public statements on September 19 should have been made months earlier, and that any statements on or before July 26 were therefore materially misleading. *See Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (dismissing complaint because "plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones"). Moreover, Brizel's positive statements on June 29 are too general to give rise to a securities fraud action and, even if those statements were actionable, Plaintiff has failed to allege any facts to suggest that those statements were misleading at the time they were made. Plaintiff's claim that LightPath made material omissions before July 26 must also be dismissed because Plaintiff offers no facts to support allegations made on information and belief. Finally, Plaintiff has failed to plead scienter, making only conclusory allegations that LightPath and its executives knew its 4Q07 results and determined to terminate Brizel on that basis before the books were even closed for that quarter.

II.    IN ADDITION TO FAILING TO PLEAD A PRIMARY VIOLATION, PLAINTIFF
       FAILS TO STATE A CLAIM UNDER SECTION 20(A) BECAUSE IT FAILS TO
       PLEAD CONTROL OF THE PRIMARY VIOLATOR AND CULPABLE
       PARTICIPATION

In order to state a claim of control person liability under Section 20(a) of the Securities

Exchange Act, Harborview must plead a primary securities fraud violation, control of the

primary violator by the defendant (in this case, Ripp), and the control person's culpable

participation in the underlying fraud. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73

(2d Cir. 1996). In order to plead culpable participation, Harborview must plead, "at a minimum,

particularized facts of the controlling person's conscious misbehavior or recklessness." *Lapin v.

Goldman Sachs*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006). Here, Harborview has failed to

plead any of the requisite elements of control person liability under Section 20(a).

As discussed above, Harborview has failed to plead a primary, underlying securities fraud

violation. However, even assuming that it has, Plaintiff's "Eleventh Cause of Action" – the only

claim against Defendant Ripp – must be dismissed for failure to plead any of the other elements

of Section 20(a) liability.

### A.    **Harborview has failed to plead control of LightPath by Ripp**

In order to plead control, a plaintiff must plead facts that support a reasonable inference

that the defendant "possessed the power to direct or cause the direction of the management and

policies of a person." *In re Philip Serv. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 485 (S.D.N.Y.

2004) (citations omitted). The control alleged must be actual, amounting to more than mere

influence, and also must include "'actual control over the transaction in question.'" *In re Alstom

SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (*quoting In re Global Crossing Ltd.

Sec. Litig.*, 02 Civ. 910 (GEL), 2005 WL 1875455, at *3 (S.D.N.Y. Aug. 5, 2005)).

At best, Harborview pleads only three facts to support its allegation that Ripp controlled LightPath: 1) Ripp allegedly stated to a Harborview representative on September 18 that he was leading efforts to terminate Brizel's employment;[8] 2) Ripp had previously served as President and CEO of LightPath; and 3) Ripp is currently Chairman of LightPath's Board.

Mere status as Chairman of the Board of Directors is simply insufficient to plead control. *Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315, 323 (S.D.N.Y. 1999) ("officer status alone is not enough to establish control person liability"). In light of case law holding that even current status as an officer is insufficient to plead control, Ripp's status as a former President and CEO hardly bears discussion. If a current officer, without more, cannot be considered a control person, it defies logic to assume that a *former* officer, by his former status, should have more control over the company than its current officers.

Finally, even if it is true that Ripp claimed to lead efforts to terminate Brizel in September, this allegation simply cannot support a reasonable inference that Ripp controlled LightPath in June or July, when the alleged fraud occurred. Indeed, this allegation directly conflicts with Harborview's own allegations that Brizel had actually been terminated on or before July 26, the date the private placement closed. "[G]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). If Ripp told a Harborview representative on September 18 that he "was leading the efforts" to terminate Brizel's employment, then it is clear that Brizel's employment had not previously terminated and concealed, as Harborview had alleged in its breach of warranty and securities fraud claims.

---

[8] Defendants assume, as they must for purposes of a motion to dismiss, that this allegation is true; however, Ripp denies that he made this statement asserts that he and LightPath sought to retain Brizel, and maintains that Brizel made the decision to leave LightPath.

Even if Plaintiff's allegations generally supported an inference that Ripp's views would be considered seriously due to his prior positions as President and CEO and his current position as Chairman of the Board, these allegations are not tied in any way to "actual control over the transaction in question," and cannot state a claim for control person liability. *Alstom*, 406 F. Supp. 2d at 487. There is no allegation that Ripp knew or should have known LightPath's 4Q07 results on June 29, July 26 or anywhere in between, nor is there any allegation that Ripp concealed LightPath's 4Q07 results or in any way delayed the announcement of Brizel's departure which occurred on September 18.

### B.    Harborview has failed to plead any culpable participation by Ripp

In the Second Circuit, in order to satisfy the PSLRA, a plaintiff must also plead that the controlling person "was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." *SEC v. First Jersey*, 101 F.3d at 1472. In order to satisfy the culpable participation pleading requirement, a "plaintiff may plead either conscious misbehavior or recklessness to satisfy the state of mind portion of the culpable participation element." *Steed Finance LDC v. Nomura Secs. Int'l, Inc.*, No. 00 CIV 8058 (NRB), 2001 WL 1111508, at *10 (S.D.N.Y. Sept. 20, 2001). In short, "the Complaint must provide some detail about what [the controlling person] is alleged to have done – and when he did it – in order to hold that the complaint provides 'particularized facts' of culpable participation." *Mishkin v. Ageloff*, No. 97 Civ. 2690 (LAP), 1998 WL 651065 at *26 (S.D.N.Y. Sept. 23, 1998). Plaintiff has done none of this. Instead, it would have this Court find Ripp liable under Section 20(a) based upon the bare conclusory assertion that Ripp "was aware of LightPath's solicitation of Harborview" and "was aware of" LightPath's 4Q07 results and Brizel's termination before July 26 (notwithstanding Ripp's alleged statement nearly two months later that he was "leading the efforts" to terminate Brizel). (Compl. ¶¶ 72, 73). The Complaint simply makes no allegations of any acts by Ripp

-16-

pertaining to Harborview on or before July 26.

Thus, Plaintiff's Eleventh Cause of Action should be dismissed. Plaintiff's allegations against Ripp are so cursory that allowing them to proceed would be tantamount to allowing strict liability for officers and directors accused of 20(a) violations, directly contrary to well-settled case law. *Ernst and Ernst*, 425 U.S. at 209 n. 28 (suggesting that Congress intended that 20(a) liability should not attach for mere negligence); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973) (*en banc*) ("[T]he intent of Congress in adding . . .[20(a)] . . . was obviously to impose liability only on those directors who fall within its definition of control and who are in some meaningful sense culpable participants in the fraud.").

III.    PLAINTIFF'S COMMON LAW FRAUD CLAIM SHOULD BE DISMISSED

Plaintiff's claim for common law fraud is premised on the same allegations made to support its Section 10(b) claim, and thus the pleading defects that doom that claim mandate the dismissal of Plaintiff's common law fraud claim as well. To state a claim for common law fraud under New York law, "a plaintiff must show (1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff." *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 327 (S.D.N.Y. 2006).

"A claim for common law fraud brought under New York law must also satisfy the particularity requirements of Rule 9(b)." *Id.* Thus, it is well-established that "[t]he elements of common law fraud are, therefore, essentially the same as those which must be alleged in order to establish a claim under Section 10(b) and Rule 10b-5." *Id. See also Pilarczyk v. Morrison Knudsen Corp.*, 965 F. Supp. 311, 322 (N.D.N.Y. 1997) ("[T]he elements of fraud under New York law and Section 10(b) essentially are the same, and since common law fraud also must be

pleaded with particularity under Fed.R.Civ.P. 9(b), plaintiffs' common law fraud claims suffer

from the same deficiencies as do their Section 10(b) claims and must therefore be dismissed.")

(internal citations and quotations omitted); *Morse v. Weingarten*, 777 F. Supp. 312, 319

(S.D.N.Y. 1991) ("Because the elements are substantially identical to those governing § 10(b),

the identical analysis applies here."). Plaintiffs' common law fraud claim must therefore be

dismissed under the same analysis and for the same reasons set forth above with respect to

Plaintiff's federal claims.


IV.    PLAINTIFF'S MISREPRESENTATION CLAIM IS PREEMPTED

Plaintiff's claim for negligent misrepresentation in connection with its purchase of

securities from LightPath must be dismissed because such claims are preempted by New York's

Martin Act. In *CPC International Inc. v. McKesson Corporation*, 70 N.Y.2d 268 (1987), the

New York Court of Appeals held that there is no private right of action under the Martin Act,

New York's version of the blue sky laws. *Id.* at 275-76 (citing N.Y. Gen. Bus. Law § 352-c).

Based on that holding, it has been established that while claims for common-law fraud are not

foreclosed by the Martin Act, "private plaintiffs will not be permitted through artful pleading to

press any claim based on the sort of wrong given over to the Attorney General under the Martin

Act." *Whitehall Tenants Corp. v. Estate of Olnick*, 623 N.Y.S.2d 585, 585-86 (1995).

Under the Martin Act, "the Attorney General need not allege or prove either scienter or

intentional fraud." *Kramer v. W10Z/515 Real Estate Ltd. P'ship*, 844 N.Y.S.2d 18, 20 (2007).

Consequently, "a private plaintiff cannot be permitted to bring a cause of action that, although

styled as one for common-law fraud, lacks proof of an essential element of common-law fraud."

*Id.*; *see also Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001) (affirming

dismissal of breach of fiduciary duty claim based in securities fraud because New York courts

have held that such claims are barred by the Martin Act); *In re Bayou Hedge Fund Litig.*, Nos. 06-MDL-1755 (CM) and 06-CV-2943 (CM), 2007 WL 2319127, at *15 (S.D.N.Y. July 31, 2007) (stating that a "vast majority of state and federal courts have found that causes of action related to a plaintiff's securities fraud claim that do not include scienter as an essential element are typically preempted by the Martin Act."); *Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 (LBS), 2004 WL 2754653 (S.D.N.Y. 2004) (collecting state and federal cases barring breach of fiduciary duty and negligent misrepresentation claims).

Applying these principles, this Court has repeatedly determined that negligent misrepresentation claims arising out of the purchase of securities are barred by the Martin Act. *See, e.g., Dover Ltd.*, 423 F. Supp. 2d at 330-31 (S.D.N.Y. 2006) (collecting cases and holding that "Plaintiffs' negligent misrepresentation claim constitutes an implied private right of action under the Martin Act which cannot be brought before this Court."); *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 137 F. Supp. 2d 251, 266-67 (S.D.N.Y. 2000) ("Because NatWest Finance's negligence and breach of fiduciary duty claims are covered by the Martin Act, these claims must be dismissed."). Accordingly Plaintiff's claim for negligent misrepresentation, based solely on their purchase of securities from LightPath, is preempted by the Martin Act and must be dismissed.


V.    PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF WARRANTY

Finally, Plaintiff's claim for breach of warranty also fails as a matter of law. To state a claim for breach of warranty, Plaintiff must allege that "(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant." *See, e.g., LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortgage Lending*, No. 04

-19-

Civ. 5452 (PKL), 2007 WL 2324052, at *8 (S.D.N.Y. Aug. 13, 2007). Here, Harborview has

failed to allege any facts showing that any warranty made by LightPath was breached, but rather

has offered only conclusory allegations that are insufficient to state a claim. *See Achtman v.*

*Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("[C]onclusory allegations or

legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to

dismiss.") (citations omitted).

The sole, general warranty relied on by Plaintiff to support its claim is found in Section

3.1(i) of the Securities Purchase Agreement dated July 26, 2007. (Compl. at ¶ 23). That section

states, in pertinent part, that:

> Since the date of the latest audited financial statements included
> within the SEC Reports, except as specifically disclosed in a
> subsequent SEC Report filed prior to the date hereof, (i) there has
> been no event, occurrence or development that has had or that
> could reasonably be expected to result in a Material Adverse
> Effect.

*Id.*; Wang Decl. Ex.1 at 3.1(i). Plaintiff in turn contends that "Material Adverse Effect" is

defined in Section 3.1(c) of the Securities Purchase Agreement to include "a material adverse

effect on the results of the operations, assets, business or condition (financial or otherwise) *of the*

*Company and the subsidiaries, taken as a whole*." (Compl. ¶ 24) (emphasis added).

Plaintiff relies on the same two "events" as a basis for its claim. First, Plaintiff claims

that the warranty in Section 3.1(i) was breached because of LightPath's "poor operational and

financial performance during its fourth fiscal quarter ending June 30, 2007." (Compl. at ¶ 25(a)).

Alternatively, Plaintiff argues that the warranty was also breached because "LightPath had, upon

information and belief, determined to terminate, or was considering terminating, the employment

of defendant Brizel, its CEO and President of more than five (5) years, without having procured

a replacement." (Compl. at ¶ 25(b)). Neither of these "events" is sufficient, as a matter of law,

to support Plaintiff's warranty claim.

First, with regard to LightPath's 4Q07 results, Plaintiff fails to allege any facts that would establish that LightPath's "operational and financial performance" during that single quarter had caused, by July 26, 2007, any material adverse effect on the company. Plaintiff's conclusory allegation consists only of comparing LightPath's fiscal fourth quarter ending June 30, 2007 to the same quarter a year prior, (Compl. at ¶ 13), but wholly ignores LightPath's overall performance for the fiscal year ending June 30, 2007, which had improved by 10%. (Wang Decl. Ex. 2). The mere fact that LightPath's performance showed a decline for a single quarter as compared to the previous year's quarter, is insufficient to establish that there had been a "material adverse effect" on the company as a whole, particularly where LightPath's fiscal year results had actually *improved* in 2007. *See ABC Arbitrage Plaintiffs Group v. Tchuruk;* 291 F.3d 336, 360 (5th Cir. 2002) (allegations of overstated financials in amount of 125 million French francs, "while a large absolute sum, is nonetheless insufficient as a matter of law to materially affect Alcatel on a consolidated basis;" comparing specific negative financial results with other, positive results).

Plaintiff's claim regarding Mr. Brizel's employment is similarly deficient. Again, Plaintiff pleads no facts that show LightPath had terminated Mr. Brizel as of July 26, 2007. Instead, Plaintiff asserts on "information and belief," that "LightPath's determination to terminate defendant Brizel had not occurred instantaneously and in a vacuum," (Compl. ¶ 25(b)), and therefore must have been made before July 26, 2007.[9] Indeed, two of Plaintiff's own factual

---

[9] Plaintiff's inability to plead any facts to suggest that Mr. Brizel was terminated before July 26, 2007, and thus its inability to allege a breach of warranty, is underscored by Plaintiff's equivocation, alleging that as of July 26, 2007 LightPath may only have been "considering terminating" Mr. Brizel. (Compl. at ¶ 25(b)). However, the mere fact that LightPath may have been considering terminating Mr. Brizel is

allegations contradict its assertions that Brizel was terminated before September 18: first, LightPath's press release of September 19, 2007 states that Mr. Brizel's termination was effective September 18, 2007, and second, Harborview alleges that on or around September 18, Ripp told Harborview that he was "leading the efforts" to terminate Brizel. (Compl. ¶ 72).

Plaintiff has failed to plead any facts to suggest that there had been a material adverse effect on LightPath as of July 26, 2007. Neither Brizel's departure nor LightPath's 4Q07 results were reported until September 19, nearly two months later, and Plaintiff has not alleged any facts to suggest that either of those events had occurred or was known on or before July 26. Moreover, even if one assumed that 4Q07 results should have been known by July 26 (or that LightPath should be strictly liable for its financial results even before it publicly discloses those results), LightPath's performance for the year was *up* compared to the year before, belying Harborview's claim that LightPath had suffered a material adverse effect "on the results of the operations, assets, business or condition (financial or otherwise) of the Company and the subsidiaries, *taken as a whole*." (Compl. ¶ 24) (emphasis added). Accordingly, Plaintiff's breach of warranty claim is meritless and should be dismissed.


## CONCLUSION

Plaintiff's fraud-based claims must fail because Plaintiff has failed to identify a single statement or omission that was materially misleading at the time it was made, and has failed to plead scienter. As a result, there is no primary violation to support Defendant Ripp's liability under Section 20(a), nor has Plaintiff pleaded the requisite control and culpable

---

insufficient to state a claim for breach, since mere consideration of a business action, without action, cannot result in a material adverse effect.

participation under this Circuit's law. Plaintiff's negligent misrepresentation claims are pre-empted, and finally, in support of the breach of warranty claim, Plaintiff has pleaded only conclusory allegations that are contradicted by facts pleaded elsewhere in the complaint. Accordingly, Defendants respectfully request that this Court dismiss Plaintiff's complaint in its entirety.

Dated: December 21, 2007                     **BAKER & HOSTETLER LLP**

                                             By: _____
                                                 Ona T. Wang (OW-5462)
                                                 Benjamin Pergament (admission pending)
                                                 Rebecca S.T. Khalil (New York state
                                                 admission pending)
                                                 45 Rockefeller Plaza
                                                 New York, New York 10111
                                                 (212) 589-4200
                                                 (212) 589-4201 (fax)

                                             *Attorneys for Defendants*