UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARBORVIEW MASTER FUND, LP,<br><br>                                    Plaintiff,<br><br>    -against-<br><br>LIGHTPATH TECHNOLOGIES, INC., KENNETH BRIZEL and ROBERT RIPP,<br><br>                                    Defendants. | Docket No.: 07 Civ. 9228 (NRB)<br><br>FIRST AMENDED COMPLAINT |

Plaintiff, Harborview Master Fund, LP ("Harborview"), by is attorneys, Cole, Schotz,

Meisel, Forman & Leonard, P.A., complaining against defendants, alleges and states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 78aa, and

pursuant to principles of supplemental jurisdiction under 28 U.S.C. § 1367.

2.      Venue is proper in the Southern District of New York pursuant to 15 U.S.C. §

78aa, and 28 U.S.C. §§1391 (b) and (c).  Many of the events and omissions giving rise to the

claims alleged herein occurred in this District.

## PARTIES

3.      Harborview is, and at all times hereinafter mentioned was, a limited partnership

organized under and by virtue of the laws of the British Virgin Islands, having an office at

Harbour House, Waterfront Drive, PO Box 972, Road Town, Tortola, British Virgin Islands.

Harborview's general partner, Harborview Advisors, LLC maintains an office in New York City

at 850 Third Avenue, New York, New York.

RECEIVED 08 JAN 31 PM 6:22 U.S. DISTRICT COURT S.D.N.Y.

4.    Upon information and belief, defendant Lightpath Technologies, Inc. ("Lightpath") is, and at all relevant times was, a Delaware corporation, which maintains its principal place of business at 2603 Challenger Tech Ct., Suite 100, Orlando, Florida 32826.

5.    LightPath is, according to its public filings, a manufacturer and integrator of precision molded aspheric optics, precision molded infrared optics, Gradium glass products, and high performance fiber-optic collimators and isolators.

6.    Upon information and belief, defendant Kenneth Brizel is an individual who resides in the State of Florida.

7.    Upon information and belief, defendant Robert Ripp is an individual who resides in the State of Florida.  Defendant Ripp is the Chairman of the Board of Directors of LightPath.

## FACTS AND COMMON TO ALL CLAIMS

8.    In or about June of 2007, Harborview was solicited, through its general partner in New York City, by LightPath's placement agent to make an investment in LightPath in connection with a private placement, by which LightPath was intending to raise $3,200,000, and possibly an additional $1,320,000, upon the exercise of warrants to purchase additional stock, also being issued in connection with the private placement.

9.    Based upon LightPath's Form 10K filing for its fiscal period ended June 30, 2007, LightPath had been operating with a negative cash flow, had "substantial cash requirements," and its inability to obtain additional financing or to raise more capital could cause the company "to discontinue operations altogether."

10.    In its Form 10Q for the quarterly period ended March 31, 2007, LightPath stated:

> In the future, we may be required to replenish cash and cash
> equivalent balances through the sale of equity securities or by
> obtaining debt.  There can be no assurances that such financing
> will be available to us, and as a result, there is significant risk to us
> in terms of having limited cash resources with which to pursue

2

<u>business opportunities. As a result of this risk, should it</u>
<u>materialize, the Company may be generally unable to sustain our</u>
<u>growth plan or even to maintain our current levels of business.</u>
<u>Either of the outcomes would materially and adversely affect our</u>
<u>results of operations and stock price.</u> Management believes the
Company has sufficient cash to fund operations for the next twelve
months. (Emphasis added.)

11.    Clearly, then, LightPath believed when it determined to conduct its private

placement that the capital raise anticipated therefrom was important and necessary to the

sustenance and planned growth of LightPath's business. In fact, as set forth and pled below,

LightPath's solicitation of Harborview to invest through its private placement was in all

likelihood necessitated by extraordinary and costly expenses that LightPath incurred during its

fiscal fourth quarter due to operational problems and issues.

12.    In furtherance of LightPath's private placement and solicitation of Harborview to

invest, on or about June 29, 2007 a conference call was conducted by and between LightPath's

then Chief Executive Officer, defendant Kenneth Brizel, and Harborview representatives Jesse

Kaplan and Benjamin Mayer. During this conference call, Mr. Brizel touted LightPath's

products, markets, and technology, and represented to Harborview that the company was

performing well, and that sales and profitability were on the rise. Mr. Brizel also informed

Harborview that the proceeds from the private placement were necessary to further expand the

company's manufacturing capabilities in its Shanghai location.

13.    At no time during this conference call did defendant Brizel inform Harborview

that the company was experiencing or had experienced any operational difficulties, nor did he

mention any events or circumstances which could have the effect of adversely impacting

LightPath's financial performance or results in its fiscal fourth quarter.

14.    Pursuant to a written Securities Purchase Agreement, dated July 26, 2007,

Harborview purchased from Lightpath, and Lightpath sold to Harborview, 125,000 shares of

3

common stock of Lightpath ("Shares") for a purchase price of $4.00 per share, or $500,000 in the aggregate. In addition, and also pursuant to the Securities Purchase Agreement, Harborview received warrants to purchase an additional 37,500 shares of LightPath common stock at a price of $5.50 per share ("Warrants").

15.     Harborview executed the Securities Purchase Agreement, and made its investment in LightPath, in reliance upon defendant Brizel's representations and omissions set forth in paragraphs 12 and 13 above, and upon LightPath's written representations and warranties in the Securities Purchase Agreement that "[s]ince the date of the latest audited financial statements included within the SEC reports, . . . there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Effect . . . ."

16.     On September 19, 2007, LightPath reported through a press release that projected results for its fourth quarter of fiscal year 2007, which ended on June 30, 2007, included a reduction in sales by $1.2 million compared to the fourth quarter of fiscal year 2006, a decrease of 33%.

17.     LightPath further disclosed in the press release that its fourth quarter revenue decline was also the result of "about $362,000 of late shipments due to manufacturing operational issues," as well as "one time charges of $342,000 due to glass yield issues, overtime for direct labor, travel for engineering and management to resolve issues, and freight and duty expenses." LightPath's CFO, Dorothy Cipolla, reported that "over the last few months the company has reduced the workforce in Orlando by 25 staff, bringing the headcount to 88," in order to "offset the poor financial performance in the fourth quarter."

18.     In addition, LightPath's September 19, 2007 press release also announced that defendant Brizel had been relieved of his responsibilities at LightPath, and that his employment

4

by the company had been terminated after having served as its CEO and President, and as a Director, for more than five (5) years. Mr. Brizel also resigned his position as Director of the Company. The press release further disclosed that "Mr. Brizel and LightPath have determined that it is mutually beneficial to make this change."

19.     On the day of this press release, and clearly as a result of the negative news contained therein, the price of LightPath common stock dropped from its September 18, 2007 closing price of $4.75, to a closing price of $3.70, a single day decline of more than 22%.

20.     In addition, in an October 1, 2007 press release announcing the release of its audited financial results for its fiscal fourth quarter, LightPath's interim CEO stated that "[i]n Q4 we experienced some extraordinary and isolated operational issues, which negatively impacted our gross margin by $341,000 or 15 percentage points of gross margin" (emphasis added).

21.     Thus, LightPath's September 19, 2007 press release admits and confirms that LightPath had had a "poor financial performance in the fourth quarter," and its October 1, 2007 press release admits and confirms the occurrence of "extraordinary . . . operational issues" with very significant financial consequences.

22.     Moreover, the September 19, 2007, press release acknowledges that, in order "[t]o offset the poor financial performance in the fourth quarter, over the last few months the company has reduced the workforce in Orlando by 25 staff, bringing the headcount to 88" (emphasis added). This statement in the September 19, 2007 press release confirms and evidences that LightPath was aware of its self-described "poor financial performance in the fourth quarter," for "the last few months" prior to September 19, 2007 (emphasis added).

23.     Since the closing of Harborview's investment occurred on July 26, 2007, less than two (2) months prior to the September 19, 2007 press release, Lightpath's admissions establish

its knowledge and awareness of its poor fiscal fourth quarter performance, and the occurrence of the material and extraordinary negative events which caused it, as of the time of the closing of Harborview's investment.

24.    In addition, the September 19, 2007 press release states that the revenue decline in the fourth quarter of 2007 was due, in part, to "about $362,000 of late shipments due to manufacturing operational issues, as well as "one time charges of $341,000 due to glass yield issues, overtime for direct labor, travel for engineering and management to resolve issues. . . ." These stated facts indicate and acknowledge that LightPath was experiencing significant operational issues, which "management" had to address and attempt to resolve, prior to the close of its fiscal fourth quarter on June 30, 2007.

25.    As a result, LightPath had to be and was aware of the admittedly extraordinary and negative events which caused its admitted poor financial performance prior to the close of the quarter on June 30, 2007, and a month prior to the closing of Harborview's investment on July 26, 2007.  Indeed, the company was directly afflicted by these events and occurrences, and its executive officers and directors responsible for managing its operations and business, including but not limited defendant Brizel, Dorothy Cipolla, the company's Chief Financial Officer, and defendant Ripp, the company's Chairman, had access to LightPath's books and records, and to timely information relating to the company's operational and financial performance.

26.    That these extraordinary operational and financial issues and events were significant and material is evinced by the fact that Lightpath itself highlighted them in its September 19, 2007 press release as the major factors contributing to its poor performance during its fiscal fourth quarter.

6

27.     Furthermore, relative to LightPath's total sales during its fiscal fourth quarter, these negative and admittedly "extraordinary" events were material and substantial from a financial standpoint.  Specifically, LightPath's loss of $362,000 of revenue as the result of "late shipments due to manufacturing operational issues" is almost 16 % of LightPath's gross sales of $2,277,000 in its fiscal fourth quarter.  Similarly, LightPath's "one time charges of $341,000 due to glass yield issues, overtime for direct labor, travel for engineering and management to resolve issues. . . ." make up 15% of LightPath's gross sales.  Together, the dollars attributable to these negative events amount to 31% of LightPath's gross sales for its fiscal fourth quarter.

28.     That these operational issues and negative events, and the company's poor financial performance that they caused, were significant and material is further evidenced by the fact that defendant Ripp stated to Harborview representative David Stefansky, during a telephone call on or about September 18, 2007, that these issues and the company's poor fiscal fourth quarter were attributable to defendant Brizel's poor performance as the company's CEO, and that their occurrence was the reason for the termination of his employment by the company.

29.     Specifically, defendant Ripp told Mr. Stefansky that the company had had enough of defendant Brizel's so-called "one time charges," the latest one relating to a mold that was improperly made and run, and which proved very costly to the company.  Defendant Ripp told Mr. Stefansky that this latest mishap was the "straw that broke the camel's back," and was the cause of Mr. Brizel's firing.  After Mr. Stefansky confronted defendant Ripp with the fact, based upon defendant Ripp's statements to him, that LightPath had solicited and accepted Harborview's investment knowing that defendant Brizel's employment was to be terminated, defendant Ripp attempted to backtrack from his acknowledgment that he and LightPath knew on July 26, 2007 that the employment of defendant Brizel was to be terminated, by nervously

7

responding that the terms relating to defendant Brizel's termination had not actually been "finalized" as of that time. In any event, defendant Ripp's statements to Mr. Stefansky indicate and confirm that as of July 26, 2007 the company had determined to fire defendant Brizel because of the company's poor fiscal fourth quarter performance.

30.    That LightPath had determined to terminate defendant Brizel's employment as of the time of the closing of Harborview's investment is further confirmed by the fact that the terms of defendant Brizel's termination – i.e., that his termination was not "for cause" and that he would receive a severance payment of $286,000 -- were negotiated, obviously over a period of time, and ultimately memorialized by a written amendment to defendant Brizel's employment agreement, dated September 18, 2007.

31.    The fact that the company had determined, as of July 26, 2007, to terminate defendant Brizel's employment, without having procured a replacement, was a material fact and event which a reasonable investor would have deemed significant to its decision of whether to invest in LightPath.

32.    Indeed, in its Form 10-Q filed for its quarterly period ended on March 31, 2007, filed on May 15, 2007, just six (6) weeks before the close of the fiscal fourth quarter on June 30, 2007, LightPath expressly referenced and incorporated certain "risk factors" that were contained in the company's Form 10-K for the fiscal year ended June 30, 2006. In that filing, LightPath acknowledged that:

> *We Rely On The Efforts Of Our Chief Executive Officer, And The Loss Of His Services Could Materially Adversely Affect Our Business.* Our success will be largely dependent upon the personal efforts and abilities of Kenneth Brizel, our President and Chief Executive Officer. Mr. Brizel is not bound by an employment agreement. If Mr. Brizel end his relationship with the company before a qualified replacement is found, then our business,

8

prospects and results of operations could be materially adversely affected. (emphasis in original).

33.    And, in its most recently filed Form 10-K for its fiscal year ended June 30, 2007, filed on October 1, 2007, LightPath reported the termination of defendant Brizel's employment with the company, and acknowledged again that "[t]he loss of his services could materially adversely affect our business." The company indicated that an "interim" chief executive officer had been appointed while the company searched for a permanent CEO, but admitted that:

> [t]here can be no assurance that we will be able to employ a candidate with the qualities and experience we desire under terms and conditions acceptable to us. <u>Our business, prospects and results of operations could be materially adversely affected as we seek a replacement for Mr. Brizel and such adverse affects could continue if we are unable to employ a qualified candidate for the position in a timely manner.</u>

(emphasis added)

34.    As indicated in paragraphs 16 through 33 above, as of July 26, 2007, the date of the closing of Harborview's investment, significant and material negative events had occurred, and were occurring at LightPath. The company had determined to terminate the employment of its long-time CEO, without having procured a replacement. The reason for the termination of defendant Brizel's employment, as stated to Mr. Stefansky by defendant Ripp, was the occurrence of the extraordinary operational and financial snafus that occurred during the fiscal fourth quarter – <u>i.e.</u>, prior to June 30, 2007.

35.    LightPath had an affirmative duty to disclose these facts and events to Harborview in connection with its solicitation of Harborview's investment, in that the existence and occurrence of these facts and events, coupled with LightPath's failure to disclose them, rendered false and misleading LightPath's statements, representations and warranty in the Stock Purchase Agreement (at Section 3.1(i)) that "[s]ince the date of the latest audited financial

9

statements included within the SEC reports, . . . there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Effect . . . ."

36.    LightPath also had an affirmative duty to disclose these facts and events to Harborview since its failure to disclose its loss of confidence in defendant Brizel as its CEO, and the impendency of its termination of his employment, rendered false and misleading LightPath's statements in its 10Q for the fiscal quarter ending March 31, 2007, which was filed on May 15, 2007, that indicated that it held defendant Brizel in high regard, and that the company's success was "largely dependent" upon his efforts and abilities.

37.    In fact, and unbeknownst to Harborview, the company had lost so much confidence in defendant Brizel that it had determined to terminate his employment without having found a suitable replacement, a situation that the company admitted in its March 31, 2007 10Q, and its 10K for its fiscal year ended June 30, 2007, could materially affect its business. Thus, LightPath's omission in this regard rendered false and misleading LightPath's aforesaid prior statements indicating that it had confidence in its long-term CEO, and that the company's management and leadership was performing well operationally and was intact.

38.    Also, the facts relating to the significant operational and financial difficulties and events that LightPath had sustained during its fiscal fourth quarter, and the impending termination of its CEO, known by LightPath at the time of the solicitation and sale of the Stock to Harborview on July 26, 2007, constituted material non-public inside information, which LightPath was under an affirmative duty to disclose in connection with its sale of securities to Harborview.

39.    LightPath had a motive to conceal from Harborview and its other potential investors the operational and financial difficulties that it had had during its fourth fiscal quarter, and also to conceal its impending termination of the employment of defendant Brizel.

40.    The company was in the midst of attempting to raise $3,200,000 through a private placement, and during June through July 26, 2007 was soliciting Harborview and other investors to purchase LightPath stock.  Clearly, the disclosure by LightPath of its operational and financial difficulties during its fiscal fourth quarter, and its impending termination of the employment of defendant Brizel, would jeopardize LightPath's ability to accomplish its pending private placement, and its desired capital raise.

41.    Had Harborview known, as of July 26, 2007, about LightPath's material operational and financial problems incurred during its fiscal fourth quarter, or about LightPath's plans to terminate the employment of its long time CEO, it would not have made its investment in LightPath.

42.    Thus, by concealing these material facts from Harborview and the other investors, LightPath was able to receive and obtain the concrete benefit of admittedly necessary capital that would not otherwise have been available.

43.    At the time of the closing of Harborview's investment, neither the Shares nor the shares issuable upon exercise of the Warrants were registered under the Securities Act of 1933, and therefore, neither of them could be offered or sold in the United States absent registration or an applicable exemption from registration.

FOR A FIRST CAUSE OF ACTION
(Breach of Warranty Against Defendant LightPath)

44.    Harborview repeats and realleges each of the allegations contained in paragraphs 1 through 43 above as if set forth at length herein.

11

45.     Pursuant to the Securities Purchase Agreement, Lightpath represented and warranted to Harborview (at section 3.1(i)) that "[s]ince the date of the latest audited financial statements included within the SEC reports, . . . there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Effect. . . ."

46.     The term "Material Adverse Effect" is defined by the Securities Purchase Agreement (at Section 3.1(c)) to include "a material adverse effect on the results of operations, assets, business or condition (financial or otherwise) of the Company and the subsidiaries, taken as a whole."

47.     As of July 26, 2007, the date of the execution of the Securities Purchase Agreement and Harborview's investment in LightPath, clearly events had occurred, of which LightPath was aware, which had had or could reasonably be expected to result in a Material Adverse Effect upon the results of operations, assets, business or condition of the LightPath, specifically:

        (a)     LightPath's poor operational and financial performance during its fourth fiscal quarter ending June 30, 2007, and the specific extraordinary events and problems which caused it, as set forth and described in paragraphs 16 through 29 above; and

        (b)     the impending termination of the employment of defendant Brizel, LightPath's CEO and President of more than five (5) years, without the company having procured a replacement, as set forth in paragraphs 28 through 34 above.

48.     These above-stated events occurred after the date of LightPath's latest audited financial statements, included within its Form 10-K for the fiscal year ended June 30, 2006.

49.     LightPath's representation and warranty in the Securities Purchase Agreement that no events had occurred which had had or could reasonably be expected to result in a Material Adverse Effect upon the results of operations, assets, business or condition of LightPath was false when made, and constitutes a willful breach of LightPath's warranties under the Securities Purchase Agreement, and also constitutes a willful violation of the "Closing Conditions" contained within section 2.3 of the Securities Purchase Agreement.

50.     Harborview relied upon LightPath's aforesaid representations and warranties in deciding to make its investment in LightPath, and would not have made its investment had it known the truth about the company's poor fiscal fourth quarter performance, or that LightPath was terminating the employment of its long-standing CEO, whom LightPath had previously and recently stated was essential to its success and would be difficult to replace.

51.     As the direct and proximate result of LightPath's breach of the Securities Purchase Agreement, and breach of warranty, and in light of the occurrence of the aforesaid events which could reasonably be expected to have a Material Adverse Effect upon the results of operations, assets, business or condition of LightPath, the value and investment quality of the securities purchased by Harborview, having decreased by more than 22% in value on the date of LightPath's September 19, 2007 press release disclosing the concealed information, has been substantially diminished in that the securities purchased by Harborview are worth significantly less than if the company had not had a poor fiscal fourth quarter.

52.     As the result of LighPath's aforesaid breach of the Securities Purchase Agreement, and the warranties contained therein, Harborview is entitled to, and hereby demands, the rescission of the Stock Purchase Agreement and the unwinding of the transaction by which it purchased 125,000 shares of LightPath common stock.

53.     Based upon the foregoing, Harborview hereby tenders to LightPath the Shares and Warrants, and demands the return of its $500,000 investment in LightPath, and a judgment awarding it reimbursement of its expenses incurred in connection with its investment, including but not limited to its reasonable attorneys' fees.

### FOR A SECOND CAUSE OF ACTION
(Against Defendant LightPath for breach of Warranty)

54.     Harborview repeats and realleges each of the allegations contained in paragraphs 1 through 53 above as if set forth at length herein.

55.     Based upon the foregoing, Harborview has sustained damages in an amount equal to the disparity between the transaction price of the securities purchased and their true investment quality and value as impacted by the material facts omitted, concealed, and misrepresented by LightPath in connection with the solicitation of Harborview's investment. The full impact of these misrepresentations and omissions, and thus the full extent of Harborview's damages, cannot be fully ascertained at this time, but will be established with certainty at the trial of this action.

### FOR A THIRD CAUSE OF ACTION
(Against Defendants Brizel and LightPath for violations of §10(b)
of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b))

56.     Harborview repeats and realleges each of the allegations contained in paragraphs 1 through 51 above as if set forth at length herein.

57.     Defendant Brizel had to know at the time of his September 29, 2007 conference call with Harborview, just two (2) days prior to the end of the fiscal fourth quarter, that LightPath was having an extraordinarily poor fourth fiscal quarter, and was not performing well operationally and financially as he had represented, and failed to disclose these facts to Harborview in connection with LightPath's solicitation of Harborview's investment.  The basis

14

for Harborview's belief in this regard is, as fully set forth in paragraphs 16 through 25 above, that the extraordinary operational issues and problems which caused the company's poor financial performance occurred during the fiscal fourth quarter itself, and defendant Brizel, as the Chief Executive Officer of LightPath, would or should have known of their occurrence, since the conference call was conducted two (2) days prior to the close of its fourth fiscal quarter.

58.     Thus, defendant Brizel's representations to Harborview at that time that LightPath was performing well operationally and financially, and that sales and profitability were on the rise, were false and misleading when he made them.

59.     For the reasons set forth in paragraphs 26 through 29 above, defendant Brizel's aforesaid false representations and omissions were material, and a reasonable investor would have deemed them significant to its decision of whether to invest in LightPath.

60.     The aforesaid misrepresentations and omissions were made by defendant Brizel with intent to deceive Harborview, and to fraudulently induce its investment in LightPath, or, alternatively, they were recklessly made in that defendant Brizel should have known, in light of the occurrence of the concealed facts and events, that his statements were unreasonable and were an extreme departure from the standards of ordinary care.

61.     Defendant Brizel's motive for deceiving Harborview was to induce, and not jeopardize, Haborview's investment, and the consequent raise of necessary capital for LightPath. This is especially so given the poor fiscal fourth quarter that LightPath had just endured, and its resultant greater need for capital. Defendant Brizel clearly had the opportunity as LightPath's Chief Executive Officer, and as the LightPath representative interacting with Harborview, to make misrepresentations and omissions designed to induce Harborview's investment.

62.     Harborview relied upon defendant Brizel's material misrepresentations and omissions in determining to make its investment in LightPath, and would not have made its investment had it known the facts relating to LightPath's financial and operational performance and condition, which, as set forth above, were fraudulently concealed and omitted by defendant Brizel.

63.     As the direct and proximate result of defendant Brizel's aforesaid misrepresentations and omissions, and as evidenced by the fact that LightPath's common stock lost 22% of its value on September 19, 2007, the date that LightPath disclosed its poor fiscal fourth quarter results, at the time of Harborview's investment a disparity existed between the price of Harborview's investment transaction and the true investment quality and value of the securities purchased by Harborview.

64.     Defendant Brizel's above stated misrepresentations and material omissions were made by a means or instrumentality of interstate commerce or of the mails.

65.     Thus, and having been made in connection with the purchase and sale of securities, defendant Brizel's fraudulent misrepresentations and omissions constitute violations of section 10(b) of the Securities and Exchange Act of 1934.

66.     Under the doctrine of respondent superior, defendant LightPath is liable for the acts and omissions of defendant Brizel, who at the time of his misrepresentations and omissions was the Chief Executive Officer of the company, acting within the scope of his employment.

67.     Based upon the foregoing, Harborview hereby tenders to LightPath the Shares and Warrants, and demands the rescission of the entire transaction by which it purchased 125,000 shares of common stock of LightPath, and demands the return of its $500,000 investment in

42949/0005-3108913v2

LightPath, as well as the reimbursement of its expenses incurred in connection with its investment, including but not limited to its reasonable attorneys' fees.

## FOR A FOURTH CAUSE OF ACTION
(Against Defendants LightPath and Brizel for violations of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j (b))

68.    Harborview repeats and realleges each of the allegations contained in paragraphs 1 through 51, and 57 through 66 above, as if set forth at length herein.

69.    Based upon the foregoing, Harborview has sustained damages in an amount equal to the disparity between the transaction price of the securities purchased and their true investment quality and value as impacted by the material facts omitted, concealed, and misrepresented by LightPath in connection with the solicitation of Harborview's investment. The full impact of these misrepresentations and omissions, and thus the full extent of Harborview's damages, cannot be fully ascertained at this time, but will be established with certainty at the trial of this action.

## FOR A FIFTH CAUSE OF ACTION
(Against LightPath, for violations of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j (b))

70.    Harborview repeats and realleges each of the allegations contained in paragraphs 1 through 51, and 57 through 66 above as if set forth at length herein.

71.    As set forth in paragraphs 17 through 25, 28 through 30, 47, 49, 57, and 60 through 61, at the time of the closing of Harborview's investment on July 26, 2007 LightPath knew and was aware of the extraordinary negative events that gave rise to its poor financial performance in its fiscal fourth quarter, and knew and was aware of the fact that it had determined to terminate the employment of defendant Brizel without having procured a suitable replacement.

17

72.    As confirmed by LightPath's acknowledgments in its 10-Q and 10-K filings referenced in paragraphs 31 through 33 above, the fact, concealed from Harborview by LightPath, that LightPath had determined to terminate its Chief Executive Officer was a material fact that should have been disclosed by LightPath in connection with its continued solicitation of Harborview's investment.  Certainly, a reasonable investor would have deemed this fact significant to a decision of whether to make an investment in LightPath.

73.    Also material was the fact, also intentionally concealed from LightPath, that LightPath had sustained "extraordinary . . . operational issues" which caused its admittedly poor fiscal fourth quarter, as alleged in paragraphs 26 through 29 above.

74.    As set forth in paragraphs 35 through 38 above, LightPath had an affirmative duty to disclose these material facts in connection with and prior to Harborview's investment in LightPath since:

(i)    its failure to disclose these material facts and events caused LightPath's statements, representations and warranty, in the Securities Purchase Agreement (paragraph 3.1), that "[s]ince the date of the latest audited financial statements included within the SEC reports . . . there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Effect . . . ." to be false and misleading;

(ii)    its failure to disclose these material facts and events rendered false and misleading LightPath's statements in its 10Q for the quarterly period ending March 31, 2007 indicating that it had confidence in its CEO, defendant Brizel, and that LightPath's management and leadership was performing well operationally and was intact; and

(iii)    the facts known by LightPath, relating to the significant operational and financial difficulties that LightPath had sustained in its fiscal fourth quarter, and the impending

18

termination of its CEO, constituted material non-public inside information which LightPath was under an affirmative duty to disclose in connection with its sale of securities to Harborview.

75.    Harborview relied upon the aforesaid misrepresentations and omissions of these material facts by LightPath, and would not have made its investment in LightPath had it been made aware of them.

76.    As set forth in paragraphs 39 through 42, and 61 above, LightPath's intentional concealment of these facts is confirmed by the fact that LightPath had a motive and an opportunity to conceal these facts from Harborview; namely, the inducement of Harborview's investment to enable LightPath to obtain necessary capital, which LightPath did obtain, and the ability to control the dissemination of information to potential investors.

77.    Alternatively, LightPath's failure to disclose the aforesaid material facts and events to Harborview in connection with the solicitation of, and prior to, Harborview's investment, was reckless in that the non-disclosure was highly unreasonable and represented an extreme departure from the standards of ordinary care.

78.    As the result of LightPath's aforesaid misrepresentations and omissions, at the time of Harborview's investment a disparity existed between the price of Harborview's investment transaction and the true investment quality and value of the securities purchased by Harborview.  Indeed, the price of LightPath's common stock dropped by more than 22% on the date that LightPath publicly disclosed these negative events that it had concealed from Harborview.

79.    Having been made in connection with the purchase and sale of securities, LightPath's aforesaid misrepresentations and omissions, made by a means or instrumentality of

interstate commerce or the mails, constitute violations of §10(b) of the Securities and Exchange Act of 1934.

80.    Based upon the foregoing, Harborview hereby tenders to LightPath the Shares and Warrants, and demands the rescission of the entire transaction by which it purchased 125,000 shares of common stock of LightPath, and the return of its $500,000 investment in LightPath, as well as the reimbursement of its expenses incurred in connection with its investments including its reasonable attorneys' fees.

FOR A SIXTH CAUSE OF ACTION
(Against LightPath, for violations of Section 10(b) of
the Securities and Exchange Act of 1934, 15 U.S.C. § 78j (b))

81.    Harborview repeats and realleges each of the allegations contained in paragraphs 1 through 51, and 57 through 66, and 71 through 79, above, as if set forth at length herein.

82.    Based upon the foregoing, Harborview has sustained damages in an amount equal to the disparity between the transaction price of the securities purchased and their true investment quality and value as impacted by the material facts omitted, concealed, and misrepresented by LightPath in connection with the solicitation of Harborview's investment. The full impact of these misrepresentations and omissions, and thus the full extent of Harborview's damages, cannot be fully ascertained at this time, but will be established with certainty at the trial of this action.

FOR A SEVENTH CAUSE OF ACTION
(Against defendant Brizel and LightPath for common law fraud)

83.    Harborview repeats and realleges each of the allegations contained in paragraphs 1 through 51, 57 through 66, and 71 through 78 above, as if set forth at length herein.

84.    Based upon the foregoing, Harborview is entitled to, and hereby demands, the rescission of the entire transaction by which it purchased 125,000 shares of common stock of

20

LightPath, and the return of its $500,000 investment in LightPath, as well as the reimbursement

of its expenses incurred in connection with its investment, including its attorneys' fees.

FOR AN EIGHTH CAUSE OF ACTION
(Against defendant Brizel and LightPath for common law fraud)

85.    Harborview repeats and realleges each of the allegations contained in paragraphs

1 through 51, 57 through 66, and 71 through 78 above, as if set forth at length herein.

86.    Based upon the foregoing, Harborview has sustained damages in an amount equal

to the disparity between the transaction price of the securities purchased and their true

investment quality and value as impacted by the material facts omitted, concealed, and

misrepresented by LightPath in connection with the solicitation of Harborview's investment.

The full impact of these misrepresentations and omissions, and thus the full extent of

Harborview's damages, cannot be fully ascertained at this time, but will be established with

certainty at the trial of this action.

FOR A NINTH CAUSE OF ACTION
(Against defendant Ripp, pursuant to §20(a) of the
Securities and Exchange Act of 1934, 15 U.S.C. § 78t(a))

87.    Harborview repeats and realleges each of the allegations contained in paragraphs

1 through 84 above as if set forth at length herein.

88.    Upon information and belief, defendant Ripp, who at all times relevant herein was

the Chairman of the Board of Directors of LighPath, was involved in and had the power to and

did control and direct the management and policies of defendant Brizel, and the management and

operations of LightPath, as well as the disclosure and flow of information relating to the

company.  The basis of Harborview's belief in this regard are statements made by defendant

Ripp to Harborview representative David Stefansky, during a telephone call on or about

September 18, 2007, that defendant Brizel's employment had been terminated as the result of the

21

company's poor performance in its fiscal fourth quarter, and that defendant Ripp had played the

lead role in terminating defendant Brizel's employment.  In addition, as reported on the

"Leadership" page of LightPath's website, defendant Ripp has been LightPath's Chairman since

1999 and has served as the President and CEO of the LightPath.

89.    Moreover, defendant Ripp executed, on behalf of LightPath, defendant Brizel's

written employment agreement, dated February 14, 2007, as well as the amendment to defendant

Brizel's employment agreement which memorialized the company's severance agreement with

defendant Brizel.

90.    In addition, and further evincing defendant Ripp's involvement in the day-to-day

operations of LightPath, defendant Ripp was quoted in the September 19, 2007 press release as

follows:

> "We remain very committed to our strategy of being a diversified
> supplier of passive optical components; as well as being the lowest
> cost producer of those components.  Our goal is to improve the
> execution of our strategy.  The new CEO will need to have the
> leadership skills to manage the company to a sustainable level of
> profitability and positive cash flows by introducing exciting new
> opportunities that will accelerate our revenue growth, and to
> increase profit margins by continuing to pursue cost reductions
> initiatives."
>
> Mr. Ripp continued, "The priorities of qualities and experiences
> that we seek in our prospective CEO are: a track record of
> execution/operations success, a familiarity in managing China
> operations, new product development background,  and a set of
> relationships within the optical space that can benefit LightPath
> with its suppliers and customers."

91.    These statements, coupled with the facts set forth in paragraphs 28 through 29,

and 88 through 89 above, clearly indicate that defendant Ripp possessed the power to direct or

cause the direction of the management and policies of LightPath.

92.     In his capacity as Chairman of the Board of LighPath, defendant Ripp was aware of LightPath's solicitation of Harborview's investment in LightPath, and was aware of, but did not disclose to Harborview, the material facts which Harborview alleges were concealed from it in order to induce its investment.

93.     Defendant Rip's failure to cause LightPath to disclose these material facts to Harborview constitute either conscious misbehavior, or, in the alternative, recklessness in that said failure was an extreme departure from the standards of ordinary care.

94.     Defendant Ripp is a control person of LightPath within the meaning of §20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78t(a), and is personally liable to Harborview for the damages sustained by Harborview as the result of the primary §10(b) violations of defendant Brizel and LightPath, as set forth and pled in the Fourth, Sixth, Eighth and Tenth Causes of Action herein.

WHEREFORE, the plaintiff, Harborview Master Fund, LP, demands judgment:

(A)     On its First, Third, Fifth, and Seventh Causes of Action, awarding it the rescission of the entire transaction by which it purchased 125,000 shares of common stock in LightPath and the return to it of its $500,000 investment in LightPath, as well as the reimbursement of its expenses incurred in connection with its investment, including its reasonable attorneys' fees;

(B)     On its Second, Fourth, Sixth, Eighth, and Ninth Causes of Action, awarding it monetary damages in an amount equal to the disparity between the transaction price of the securities purchased and their true investment quality and value as impacted by the material facts omitted, concealed, and misrepresented by LightPath in connection with the solicitation of Harborview's investment, which amount cannot be fully ascertained at this time, but will be

23

established with certainty at the trial of this action, together with its costs and expenses, including its reasonable attorney's fees;

(C)     its costs and disbursements herein, including but not limited to its reasonable attorneys fees pursuant to the Securities Purchase Agreement and the relevant statutory authorities; and

(D)     for such other further relief as to this court deems just and proper.

DATED:     New York, New York          COLE, SCHOTZ, MEISEL,
           January 31, 2008             FORMAN & LEONARD, P.A.
                                        A Professional Corporation
                                        Attorneys for Plaintiff
                                        HARBORVIEW MASTER FUND LP

                                        By:_____
                                            ROSS J. ELLICK, ESQ. (RE-9117)
                                            900 Third Avenue
                                            New York, New York 10022
                                            (212) 752-8000

## **JURY DEMAND**

Plaintiff Harborview Master Fund, LP hereby requests trial by jury of all issues that may be tried as a matter of right by a jury.

_____
ROSS J. ELLICK, ESQ. (RE-9117)

42949/0005-3108913v2