UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARBORVIEW MASTER FUND, LP,

              PLAINTIFF,

  -AGAINST-

LIGHTPATH TECHNOLOGIES, INC.,

KENNETH BRIZEL AND ROBERT RIPP,

              DEFENDANTS.

CIVIL ACTION NO. 07 CIV. 09228 (NRB)

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

**BAKER & HOSTETLER LLP**
Ona T. Wang (OW-5462)
Benjamin Pergament (admission pending)
45 Rockefeller Plaza
New York, New York 10111
(212) 589-4200
(212) 589-4201 (fax)

March 28, 2008

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 2

ARGUMENT .......................................................................................................... 4

    I.    PLAINTIFF'S SECURITIES FRAUD CLAIM(S) MUST BE
DISMISSED FOR FAILURE TO STATE A CLAIM AND FOR
FAILURE TO PLEAD WITH PARTICULARITY ............................................. 4

        A.    Brizel's statements on June 29, 2007 were not misleading and are
not actionable ........................................................................................ 7

        B.    LightPath's alleged omissions before July 26 cannot form the basis
of a securities fraud claim ...................................................................... 9

        C.    Plaintiff's conclusory allegations of scienter are also insufficient. ........ 12

            1.    There is a more plausible nonculpable explanation for
Defendants' conduct. .................................................................. 15

            2.    Plaintiff has failed to plead any motive or opportunity to
commit fraud. .............................................................................. 16

    II.    IN ADDITION TO FAILING TO PLEAD A PRIMARY VIOLATION,
PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(a)
BECAUSE IT FAILS TO PLEAD CONTROL OF THE PRIMARY
VIOLATOR AND CULPABLE PARTICIPATION ........................................ 18

        A.    Harborview has failed to plead control of LightPath by Ripp ................ 18

        B.    Harborview has failed to plead any culpable participation by Ripp ........ 20

    III.    PLAINTIFF's COMMON LAW FRAUD claimS should be dismissed ............ 21

    IV.    PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF
WARRANTY ............................................................................................... 22

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

Page

**Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336 (5th Cir. 2002) ......................24

*Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328 (2d Cir. 2006) ....................22

*Acito v. IMCERA Group,* 47 F.3d 47 (2d Cir. 1995).................................................6, 13

*Adair v. Kaye Kotts Associates, Inc.,* No. 97 Civ. 3375 (SS), 1998 WL 142353 (S.D.N.Y. Mar. 27, 1998)..................................................................................9

*ATSI Comm'ns, Inc. v. The Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007) ........................6

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007) .............................................4

*Burstyn v Worldwide Xceed Group, Inc.,* No. 01 Civ. 1125 (GEL), 2002 WL 31191741 (S.D.N.Y. Sept. 30, 2002)..........................................................................5

*Chill v. General Elec. Co.,* 101 F.3d 263 (2d Cir. 1996) ...........................................13

*Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42 (2d Cir. 1991).............................2

*Decker v. Massey-Ferguson,* 681 F.2d 111 (2d Cir. 1982) ........................................13

*Denny v. Barber,* 576 F.2d 465 (2d Cir. 1978) ......................................................17

*Dover Ltd. v. A.B. Watley, Inc.,* 423 F. Supp. 2d 303 (S.D.N.Y. 2006) ..........................21

*Ernst and Ernst v. Hochfelder,* 425 U.S. 185 (1976) ............................................5, 21

*Fadem v. Ford Motor Co.,* 352 F. Supp. 2d 501 (S.D.N.Y. 2005) ...............................17

*Ganino v. Citizens Utils. Co.,* 228 F.3d 154 (2d Cir. 2000).......................................5, 6

*Garber v. Legg Mason, Inc.,* --- F. Supp.2d ---, No. 06 Civ 9436 (DC), 2008 WL 697638 (S.D.N.Y., Mar. 17, 2008)..........................................................................17

*In re Alstom SA Sec. Litig.,* 406 F. Supp.2d 433 (S.D.N.Y. 2005)........................18, 19, 20

*In re Carter-Wallace, Inc. Sec. Litig. ("Carter-Wallace I"),* 150 F.3d 153 (2d Cir. 1998) ..............11

*In re Carter-Wallace, Inc. Sec. Litig.("Carter-Wallace II"),* 220 F.3d 36 (2d Cir. 2000) ...........6, 13

*In re Enron Corp.,* 370 B.R. 583 (Bankr. S.D.N.Y. 2007) .........................................20

*In re Global Crossing Ltd. Sec. Litig.,* 02 Civ. 910 (GEL), 2005 WL 1875445 (S.D.N.Y. Aug. 5, 2005)..................................................................................19

*In re IBP, Inc. Shareholders Litig.,* 789 A.2d 14 (Del. Ch. 2001) ................................24

*In re Openwave Sys. Sec. Litig.,* 528 F. Supp.2d 236 (S.D.N.Y. 2007) ...........................16

*In re Pfizer, Inc. Sec. Litig.,* --- F. Supp.2d ---, No. 06 Civ. 14199 (LAK), 2008 WL 540120 (S.D.N.Y., Feb. 28, 2008)..................................................................12

*In re Philip Serv. Corp. Sec. Litig.,* 383 F. Supp. 2d 463 (S.D.N.Y. 2004) .....................18

*In re Regeneron Pharm.,* 03 Civ. 3111 (RWS), 2005 WL 225288 (S.D.N.Y. Feb. 1, 2005) ...........17

*In re Salomon Analyst Winstar Litig.,* 02 Civ. 6171 (GEL), 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006)..................................................................................16

*In re Scholastic Corp. Sec. Litig.,* 252 F.3d 63 (2d Cir. 2001) ....................................8

*Jenkins v. McKeithen,* 395 U.S. 411 (1969).............................................................4

*Kalnit v. Eichler,* 264 F.3d 131 (2d Cir. 2001) ...................................................5, 16

*Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir. 1973).................................................21

*Lapin v. Goldman Sachs,* 506 F. Supp. 2d 221 (S.D.N.Y. 2006)....................................18

*LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortgage Lending,* No. 04 Civ. 5452 (PKL), 2007 WL 2324052 (S.D.N.Y. Aug. 13, 2007)..........................................................22

*Mills v. Polar Molecular Corp.,* 12 F.3d 1170 (2d Cir.1993)..........................................5

*Mishkin v. Ageloff,* No. 97 Civ. 2690 (LAP), 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998)...........20

## TABLE OF AUTHORITIES

Page

*Morse v. Weingarten*, 777 F. Supp. 312 (S.D.N.Y. 1991) ...........................................22
*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ..........................................10, 12, 16
*Pacheco v. Cambridge Technology Partners, Inc.*, 85 F. Supp.2d 69 (D. Mass. 2000) ...................10
*Pilarczyk v. Morrison Knudsen Corp.*, 965 F. Supp. 311 (N.D.N.Y. 1997) ....................................21
*Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315 (S.D.N.Y. 1999)....................................19
*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996)................................................................................8, 9, 13, 16
*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) .........................................18, 20
*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir.1994)..............................5, 13, 16
*Steed Finance LDC v. Nomura Secs. Int'l, Inc.*, No. 00 CIV 8058 (NRB), 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001)......................................................................................20
*Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 127 S.Ct. 2499 (2007)....................................13, 15
*United States ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613 (S.D.N.Y. 2006)...................................................................................................5
*United States ex rel. Woods v. Empire Blue Cross and Blue Shield*, No. 99 Civ. 4968 (DC), 2002 WL 1905899 (S.D.N.Y. Aug. 19, 2002)...........................................................................5
*Wesley v. Muhammad*, No. 05 Civ. 5833(GEL)(MHD), 2008 WL 123812 (S.D.N.Y. Jan. 10, 2008) ...............................................................................................................................19
*Xerion Partners I LLC v. Resurgence Asset Mgmt.*, 474 F. Supp. 2d 505 (S.D.N.Y. 2007) 5, 6, 8, 10, 14

**Statutes**
15 U.S.C. §78j(b) ..................................................................................................................4
15 U.S.C. §78u-4(b)(1) .......................................................................................................5
15 U.S.C. §78u-4(b)(2) .....................................................................................................12

**Rules**
17 C.F.R. §240.10b-5(b) ..................................................................................................4, 5
Fed. R. Civ. P. 9(b)................................................................................................5, 6, 8, 22

## PRELIMINARY STATEMENT

This is a classic case of fraud by hindsight.  Plaintiff, a sophisticated investor, seeks to rescind its investment on the sole basis of public announcements made months after it invested in LightPath's private placement.  Plaintiff's complaint, larded with conclusory allegations, pleads insufficient facts to support its allegations that statements or alleged omissions by LightPath prior to the closing were false or materially misleading.  Instead, Plaintiff would hold LightPath, its former CEO, and current Chairman liable for failing to report fourth fiscal quarter results *before* the quarter had come to a close and for failing to announce the termination of its CEO *nearly three months before* he left the company.  Courts in this Circuit have consistently dismissed actions such as this, correctly concluding that defendants are not required to be clairvoyant.

Plaintiff filed its original Complaint on October 15, 2007, and Defendants first moved to dismiss on December 21, 2007.  Plaintiff has now filed a First Amended Complaint ("Am. Compl.") in an attempt to salvage its claims.[1]  Despite this second bite at the apple, the Amended Complaint remains a hodgepodge of conclusory and repetitive allegations that jump around chronologically in an attempt to hide fatal deficiencies in its claims.  The Amended Complaint asserts no additional misrepresentations or omissions, and fails to sufficiently allege facts to support the claims that were originally pled.  Instead, Plaintiff selectively quotes from later press releases and SEC filings to offer unsupported conclusions about what Defendants allegedly knew and when they allegedly knew it.  As more fully set forth below, the inability of Plaintiff to sufficiently identify and allege any misrepresentation or omission made by Defendants with the requisite scienter mandates that the

---

[1] In response to Defendants' original motion to dismiss, Plaintiff has dropped its claim for negligent misrepresentation in recognition of the fact that such a claim is preempted by New York's Martin Act. Plaintiff's negligent misrepresentation claim should therefore be deemed abandoned and dismissed with prejudice.

Amended Complaint be dismissed with prejudice in its entirety.

## FACTUAL BACKGROUND

Plaintiff's claims arise from a private placement in which Harborview Master Fund, LP ("Harborview" or "Plaintiff") purchased 125,000 shares of common stock at $4.00 per share from Defendant LightPath Technologies, Inc. ("LightPath") and received warrants to purchase an additional 37,500 shares of LightPath common stock at $5.50 per share, pursuant to a Securities Purchase Agreement dated July 26, 2007.  (Am. Compl. ¶ 14).  In the Securities Purchase Agreement, LightPath warranted that "[s]ince the date of the latest audited financial statements included within the SEC Reports . . . there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Effect."  (Am. Compl. ¶ 15; Wang Decl. Ex. 1 at 3.1(i)).[2]  "Material Adverse Effect" is defined to include "a material adverse effect on the results of operations, assets, business or condition (financial or otherwise) of [LightPath and its subsidiaries] . . . *taken as a whole*.  (Am. Compl. ¶ 46; Wang Decl. Ex. 1 at 3.1(b)(ii) (emphasis added).  The private placement closed on July 26, 2007.  (Am. Compl. ¶ 14).

On September 19, 2007, LightPath issued a press release which included preliminary results for the fourth quarter of fiscal year 2007, ending June 30, 2007 ("4Q07").  (Am. Compl. ¶ 16; Wang Decl. Ex. 2).  This press release indicated a reduction in sales as compared to the fourth quarter of the previous fiscal year and disclosed the reasons for the revenue decline.  (Am. Compl. ¶¶ 16-17; Wang Decl. Ex. 2).  The revenue decline was attributed, in part, to a reduced volume of new orders as a result of market conditions, late shipments due to operational issues, and higher cash

---

[2] *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) ("[W]hen a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC," even where plaintiff chooses not to attach such documents to complaint, if those documents are "integral to the complaint;" defendant may attach such documents without converting a 12(b)(6) motion to a summary judgment motion).

expenditures. (Wang Decl. Ex. 2). The press release also announced that LightPath's CEO,

Kenneth Brizel ("Brizel"), ended his employment with LightPath effective September 18, 2007. *Id.*

In addition to the projected decline in fourth quarter revenues, and notably absent from

Plaintiff's complaint, the September 19 press release reported a 10% overall *increase* in 2007 sales

as compared to 2006. (See Wang Decl. Ex. 2). The press release also announced that Jim Gaynor,

Senior Vice President of Global Operations, had been appointed interim CEO after Brizel's

"mutually beneficial" departure from the company.[3] *Id.*

In its action for damages and rescission of the July 26 private placement, Harborview

claims, in essence, that LightPath and Brizel "knew or should have known," before July 26, the

information disclosed in the September 19 press release. (Am. Compl. ¶¶ 22-25, 28-29).

According to Harborview, positive statements made by Brizel on a conference call on June 29 – and

LightPath's failure to update that information before July 26 – result in liability for LightPath,

Brizel, and Robert Ripp ("Ripp"), LightPath's Chairman. Specifically, on June 29, 2007, one day

before the close of LightPath's fiscal fourth quarter, Brizel participated in a conference call with

Harborview representatives to discuss Harborview's potential investment in LightPath. (Am.

Compl. ¶ 12). In this call, Brizel "touted LightPath's products, markets, and technology" and

informed the Harborview representatives that "the company was performing well, and that sales and

profitability were on the rise." *Id.* The proceeds from the private placement would be used "to

further expand the company's manufacturing capabilities in its Shanghai location." *Id.* On the June

29 call, Brizel did not specifically discuss 4Q07 results, nor did he indicate that he intended to leave

LightPath. The September 19 press release was the first public disclosure of LightPath's

---

[3]  On January 16, 2008, LightPath announced that, after serving as interim CEO, Mr. Gaynor was appointed
LightPath's President and CEO. (Wang Decl. Ex. 4).

preliminary 4Q07 results and Brizel's departure,[4] almost two months after Harborview's investment and almost three months after Brizel's June 29 conference call.  The Complaint does not allege any facts that would show that, at any time before July 26, either LightPath or Brizel knew LightPath's 4Q07 results (or, for that matter, that Brizel would be leaving LightPath on September 18).

## ARGUMENT

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must "liberally construe[]" the complaint in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  The Court is to assume that "all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  Accordingly, while Defendants disagree vigorously with many of the "facts" and characterizations alleged by Plaintiffs, Defendants accept those allegations as true for the limited purpose of this motion.

I.    **PLAINTIFF'S SECURITIES FRAUD CLAIM(S) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AND FOR FAILURE TO PLEAD WITH PARTICULARITY**

Plaintiff's Third, Fourth, Fifth and Sixth Causes of Action seek damages and rescission for Brizel's and LightPath's alleged violation of §10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. §240.10b-5(b).  Under Rule 10b-5(b), it is

> [u]nlawful for any person, directly or indirectly . . . (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security.
> 17 C.F.R. §240.10b-5.

---

[4] Harborview alleges that Robert Ripp, ("Ripp"), Chairman of the Board of Directors of LightPath, participated in a telephone conference with a Harborview representative on or around September 18, 2007. According to Harborview, during this telephone conference, Ripp allegedly told a Harborview representative that he believed Brizel was responsible for LightPath's 4Q07 performance. (First Am. Compl. ¶ 28). Ripp, however, denies these allegations.

In order to state a claim under Rule 10b-5(b), Harborview must plead that Brizel and LightPath, "in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter." *Burstyn v Worldwide Xceed Group, Inc.*, No. 01 Civ. 1125 (GEL), 2002 WL 31191741, at *4 (S.D.N.Y. Sept. 30, 2002) (emphasis omitted) (*quoting Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000)). Scienter is defined as "an intent to deceive, manipulate or defraud." *Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976); *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001).

Securities fraud claims under Rule 10b-5 are subject to the heightened pleading requirement of Rule 9(b) that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). Moreover, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(b)(1), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (*quoting Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). "In short, a plaintiff must 'set forth the who, what, when, where and how of the alleged fraud.'" *United States ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 623 (S.D.N.Y. 2006) (*quoting United States ex rel. Woods v. Empire Blue Cross and Blue Shield*, No. 99 Civ. 4968 (DC), 2002 WL 1905899, at *4 (S.D.N.Y. Aug. 19, 2002) (citation omitted)); *Xerion Partners I LLC v. Resurgence Asset Mgmt.*, 474 F. Supp. 2d 505, 516 (S.D.N.Y. 2007). Moreover, the PSLRA requires that, for each statement alleged to be misleading, plaintiffs must specify "the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see*

*also ATSI Comm'ns, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); Xerion *Partners I*, 474 F. Supp. 2d at 516. "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Comm'ns*, 493 F.3d at 99; *see also In re Carter-Wallace, Inc. Sec. Litig. ("Carter-Wallace II")*, 220 F.3d 36, 40 (2d Cir. 2000) ("'[C]onclusory allegations' do not satisfy pleading requirements of Rule 9(b).").

In order to plead scienter, Rule 9(b) and the PSLRA also require plaintiffs to "allege facts giving rise to a strong inference of fraudulent intent, either by alleging facts (1) showing that defendants had both motive and opportunity to commit fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Xerion Partners I*, 474 F. Supp. 2d at 517 (*citing Acito v. IMCERA Group*, 47 F.3d 47, 52 (2d Cir. 1995) (internal citations omitted)). "General allegations that the defendants acted in their economic self-interest" or "[m]otives that are generally possessed by most corporate directors and officers" are not enough to adequately plead motive and opportunity. *Id.* (*citing Ganino,* 228 F.3d at 170).

Here, Harborview is unable to plead with particularity any material misstatement by Brizel or omission by LightPath which it had a duty to disclose, nor can it plead the requisite scienter. Harborview points to a June 29 conference call which purportedly contained false statements or omissions of material fact. The crux of Harborview's claims, however, appears to be a classic fraud by hindsight: namely, that LightPath should have known as early as June 29 the facts it disclosed in the September 18 press release.[5] Specifically, Plaintiff claims that Brizel "touted LP's products, markets and technology" and "represented that the company was performing well, and that sales and profitability were on the rise;" and that the proceeds of the private placement would be used to

---

[5] Plaintiff makes additional allegations that LightPath's third quarter 2007 report, filed on May 15 for the period ending March 31, was also "false and misleading." (Am. Compl. ¶ 36). Its inclusion is illogical as Plaintiff has made no allegation that such statements were false at the time they were made, nor has it identified how these statements were "false and misleading."

further LightPath's Shanghai expansion. (Am. Compl. ¶ 12.) Plaintiff also claims that before the

closing of the private placement, LightPath failed to disclose certain facts about its 4Q07

performance and alleged plans to terminate Brizel on the basis of that 4Q07 performance.

However, Plaintiff has failed to plead any facts to suggest that LightPath knew or should have

known its 4Q07 performance before the end of the quarter, or that LightPath intended to terminate

Brizel on that basis. Moreover, there is no indication that LightPath had any duty to disclose these

facts before it issued the September 19 press release.

  As discussed below, each of these purported statements or omissions is not actionable, and

Plaintiff's securities fraud claims at its Third, Fourth, Fifth and Sixth Causes of Action must be

dismissed with prejudice.

A.    **Brizel's June 29 statements were not misleading and are not actionable.**

  Plaintiff claims that on a June 29 conference call, Brizel "touted LightPath's products,

markets and technology, and represented to Harborview that the company was performing well, and

that sales and profitability were on the rise," and that proceeds of the private placement would be

used "to further expand the company's manufacturing capabilities in its Shanghai location." (Am.

Compl. ¶ 12).

  None of these statements is actionable because they were not misleading at the time they

were made.[6] "[T]out[ing] LightPath's products, markets and technology, and represent[ing] to

Harborview that the company was performing well, and that sales and profitability were on the

rise," is simply too general to form the basis of a 10b-5 action, and Harborview has not stated how

these statements were materially misleading at the time they were made. Indeed, contrary to

---

[6] Brizel's statement regarding LightPath's Shanghai expansion and the use of funds cannot support a
securities fraud claim because Plaintiff has not alleged that any portion of this statement was false or
misleading.

Harborview's assertions, there is at least one interpretation of Brizel's statements that is true: while Harborview makes much of the fact that 4Q07 sales were lower than 4Q06 sales, it ignores the fact that fiscal year 2007 sales and revenue *increased* over fiscal year 2006. (Wang Decl. Exs. 2, 3). Moreover, Brizel's statements were made *before* the quarter's close; to hold Defendants liable for general optimistic statements before the close of the accounting period would hold companies to a level of knowledge beyond even that of their accountants and auditors.

Even if one were to assume that Brizel intended to limit his remarks in the June 29 call to 4Q07 sales alone, "allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud." *Xerion Partners I*, 474 F. Supp. 2d at 517 (citations omitted). Such inconsistencies (if they exist) do not make the earlier statements false at the time they were made unless a plaintiff is able to specify the conflicting, earlier reports that provided the information, specify who prepared these reports and when, and specify how firm the numbers were or which company officers reviewed the numbers.[7] *Id.* (citing *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001). This Harborview has utterly failed to do.

At best, the statements reflected the company's optimism at the time, or corporate "puffery," which cannot form the basis of a 10b-5 claim. *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996) (corporate puffery not actionable under federal or state law). Rule 9(b) requires that the plaintiff specify the purportedly misleading statement and state how it was materially misleading. A vague statement expressing optimism or a

---

[7] It is also unlikely that either "misrepresentation" relied upon by Harborview – 4Q07 results or Brizel's departure, even if they were known before July 26 – is material. As discussed below with regard to the breach of warranty claim, although LightPath's 4Q07 sales were lower than sales in the same quarter in the previous year, the company still finished the fiscal year with higher sales and revenue than the previous year. Moreover, Harborview has not alleged that the interim replacement for Brizel, Jim Gaynor, LightPath's Senior Vice President, Global Operations, was an inadequate candidate for interim CEO or not qualified to act as CEO.

positive belief in the company's products is classic commercial puffery and is not actionable. *Id.* at

811 ("general announcements" by a company that it was optimistic about economic future and

expected its product to perform well were puffery and "cannot constitute actionable statements

under the securities laws").  Even statements that express optimism about current and future

economic growth are too general to be actionable. *Id.* at 806, 810-11 (statements that company was

"optimistic" about current year, business was "strong and growing" and "doing quite well within the

competitive environment" were too general to support a securities fraud claim).  As in *San Leandro*,

Brizel's statement "that sales and profitability were on the rise" – a generic statement of economic

optimism – is true, and even if false is too general to support a securities fraud claim.

**B.**    **LightPath's alleged omissions before July 26 cannot form the basis of a securities fraud claim**

Plaintiff also suggests that LightPath made two material omissions before the private

placement on July 26: first, that LightPath knew and failed to disclose its 4Q07 results, and second,

that LightPath had decided to terminate Brizel for cause based on those results.  Both of these

alleged "omissions," supported entirely by conclusory allegations and contradicted by later

statements in LightPath's press releases, are wholly dependent on a finding that LightPath knew and

had a duty to disclose its 4Q07 results to Harborview less than one month after the quarter's end,

well before its audit was completed, *and* before it made any such disclosures to the public.  Thus,

any securities fraud claim against LightPath for omissions before July 26 must also fail under the

particularity requirement of Rule 9(b).

In order for an omission to form the basis of a 10b-5 claim, the omission must be material,

and there must have been a duty to disclose.  *Adair v. Kaye Kotts Associates, Inc.*, No. 97 Civ. 3375

(SS), 1998 WL 142353, at *8 (S.D.N.Y. Mar. 27, 1998).  Here, Plaintiff has failed to plead an

omission or a duty to disclose: LightPath can only have made an actionable omission if it knew its

4Q07 results by July 26. But not only has Plaintiff failed to allege facts to suggest that LightPath knew its 4Q07 results by July 26, less than a month after the close of the quarter, but Plaintiff has also failed to plead any facts to suggest that even if LightPath had known its 4Q07 results internally, it was engaged in deliberations to terminate its CEO on the basis of those results at that time. Indeed, the September 19 press release – upon which Plaintiff relies so heavily as backward-looking 'evidence' that Brizel's statements in June were false – suggests just the opposite: on its face, it states that Brizel left without cause and that his termination was effective on September 18. Plaintiff simply argues that Defendants knew or should have known LightPath's 4Q07 results before July 26; unsupported claims that LightPath had different information before July 26 are insufficient to survive a motion to dismiss. *See Xerion Partners I*, 474 F. Supp. 2d 505 (S.D.N.Y. 2007) (dismissing securities fraud claims as "fraud by hindsight" where reports, issued after closing of private placement, provided less positive information than projections given to plaintiff in connection with private placement); *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (corporate officials only responsible for revealing those material facts reasonably available to them; allegations that defendant should have anticipated future events and made disclosures earlier than they actually did do not suffice to make out a claim of securities fraud); *see also Pacheco v. Cambridge Technology Partners, Inc.*, 85 F. Supp.2d 69, 76 (D. Mass. 2000) (in breach of warranty action, "[t]he fact that analysts and the Street crave intra-quarterly information does not mean that companies . . . incur liability by maintaining *internal* company projections that may differ from *external* reports) (emphases in original). In *Xerion Partners I*, the Court noted that a conclusory allegation that earlier financials were fraudulently inflated because a later report provided a lower number is insufficient to withstand a motion to dismiss. 474 F. Supp.2d at 518 ("Xerion has not alleged a single fact to support its claim that the EBITDA number was inflated - instead, it has

-10-

simply concluded that it was").

Further, even one of the press releases cited by Plaintiff belies its post-hoc claim: LightPath's October 1 press release explains that the one-time charges that were part of the cause of LightPath's lower 4Q07 results were related to LightPath's shift of operations to China:[8]

> "These one time charges were attributed to glass yield issues, increased direct labor, inventory adjustment associated with the China operation startup and travel for engineering to train operators and upgrade molding equipment to accept the new RoHS compliant glass system."

(Wang Decl. Ex. 3). There is nothing in this statement, which was available to Plaintiff even before it filed its original Complaint, that suggests any awareness on the part of "management" of the impact of those charges on the fourth quarter.

Plaintiff offers no facts to suggest that Defendants were aware of, or were required to disclose to Plaintiff LightPath's 4Q07 performance as early as July 26, pointing only to later press releases and arguing that the information in them should have been disclosed earlier. Even assuming, *arguendo*, that Defendants were aware before July 26 of the events that would lead to lower 4Q07 financials, Plaintiff has failed to plead any facts that suggest that awareness of those events led to a duty to disclose the events or their financial effect at any time before LightPath knew how its financials would be affected. *Cf. In re Carter-Wallace, Inc. Sec. Litig. ("Carter-Wallace I")*, 150 F.3d 153, 157 (2d Cir. 1998) (in securities fraud case involving deaths of patients using medication, drug company did not have duty to disclose drug-related deaths or impact on financial

---

[8] Plaintiff has failed to address the materiality LightPath's 4Q07 results as well, making only the conclusory statement that "a reasonable investor would have deemed them [the alleged misstatements and omissions] significant to its decision of whether to invest in LightPath." (Am. Compl. ¶ 59.) However, the October 1 press release suggests just the opposite: the lower 4Q07 results reflect costs associated with LightPath's expansion in China and correspondent reductions in the United States. Given that investors in the private placement knew that the proceeds of the transaction would be used to fund LightPath's expansion in China, (First Am. Compl. ¶ 12), Harborview cannot now complain that LightPath took the very steps that the private placement was intended to fund.

results until company "had reason to believe that the commercial viability of . . . drug was threatened;" affirming dismissal for failure to state a claim and declining to find that company should have disclosed drug-related deaths any earlier than it had); *In re Pfizer, Inc. Sec. Litig.*, --- F. Supp.2d ---, No. 06 Civ. 14199 (LAK), 2008 WL 540120 at *5 (S.D.N.Y., Feb. 28, 2008) (no duty to disclose conflicting evidence of efficacy of drug).

Since Plaintiff has not and cannot allege any facts that suggest that LightPath knew its 4Q07 results as of the time of Plaintiff's investment, it is unsurprising that Plaintiff also can allege no facts to suggest that LightPath had determined to terminate Brizel by July 26 on the basis of those results. Plaintiff's allegations in this regard stem from a phone conversation between Harborview's Mr. Stefansky and LightPath's Mr. Ripp on September 18, in which Mr. Ripp disclosed that Mr. Brizel would be leaving the company. From that statement, Harborview jumps to the unsupported conclusion that Brizel's severance *must* have been negotiated "over a period of time," and thus LightPath had terminated Brizel months earlier. (Am. Compl. ¶ 28-30). Although Plaintiff goes on to assert that the nondisclosure of Brizel's termination was material, Plaintiff's claim fails at the first step of the analysis, because Plaintiff cannot sufficiently allege that there was anything to disclose at the time of Plaintiff's investment.

**C.    Plaintiff's conclusory allegations of scienter are also insufficient.**

Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2). In order to plead scienter in a Rule 10b-5 claim, a plaintiff must allege facts that "give rise to a strong inference of fraudulent intent." *Novak*, 216 F.3d at 307. The Supreme Court has cited with approval the Second Circuit's determination that the 'strong inference' standard for scienter was "appropriate . . . to ward off allegations of 'fraud by hindsight.'" *Tellabs, Inc. v. Makor Issues and*

*Rights, Ltd.*, 127 S.Ct. 2499, 2508 (2007) (*citing Shields*, 25 F.3d at 1129). The Second Circuit has repeatedly held that securities fraud defendants cannot be expected to be clairvoyant, and dismissed claims including mere conclusory allegations of scienter. *See Acito*, 47 F.3d at 53 ("defendants' lack of clairvoyance simply does not constitute securities fraud"); *San Leandro*, 75 F.3d at 812 (dismissing claim where plaintiffs offered only "conclusory allegations to support their contention" that defendant knew or should have known different facts prior to public statement); *Decker v. Massey-Ferguson*, 681 F.2d 111, 117 (2d Cir. 1982) ("[E]conomic prognostication, though faulty, does not, without more, amount to securities fraud."); *Carter-Wallace II*, 220 F.3d at 40 (appellants "must provide 'at least a minimal factual basis for their allegations of scienter'" (*quoting Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) (internal quotation marks omitted)).

Plaintiff makes two allegations to suggest that LightPath and Brizel were aware of LightPath's 4Q07 results before they were reported, and both are clearly insufficient. First, Plaintiff selectively quotes from LightPath's September 19 press release stating that "[t]o offset the poor financial performance in the fourth quarter, over the last few months the company has reduced the workforce in Orlando by 25 staff, bringing the headcount to 88." (Am. Compl. ¶ 22). Plaintiff then argues that this statement shows that LightPath was necessarily aware of its fourth quarter performance as of July 26, because the reduction in force in Orlando was occurring "over the last few months." (*Id.* ¶ 23). However, when the purported misstatement is read in context, the press release explains that the reduction in force in Orlando is related to LightPath's venture in Shanghai:

> "This should provide a reduction in our payroll costs of about $0.9 million during fiscal 2008. As more of the production is shifting to Shanghai, the Orlando facility needs to be right-sized. All areas of expense are being evaluated for cost savings with the intent to bring the company to profitability. The Orlando facility has twice as much space as is needed and costs approximately $1.0 million per year."

(Wang Decl. Ex. 2 ). When viewed in context, the statements in the September 19 press release in

no way evidence awareness by LightPath before July 26 that its 4Q07 results would be lower than the previous year's fourth quarter.  Rather, as the press release plainly states, the reduction in the Orlando workforce was made because of a shift in operations to Shanghai.  Thus, the September 19 press release provides a plausible, nonculpable explanation for the reduction in workforce that *refutes* Plaintiff's conclusory allegation that LightPath's fourth quarter performance drove the reduction in workforce.[9]  Plaintiff's circular argument seems to be that the Orlando downsizing was done because of the 4Q07 performance and not because of expansion to Shanghai as stated in the September 19 release; therefore, the fact that the Orlando downsizing began before September 19 must mean that LightPath knew and had a duty to disclose its fourth quarter results before it actually did so.  This argument, however, cannot support any inference of scienter, let alone a strong one, because Plaintiff's premise is also its conclusion; namely, that the downsizing in Orlando was done *because* LightPath knew its 4Q07 results by July 26.  However, when a plaintiff contends that a defendant had access to contrary facts and failed to disclose them, the plaintiff must identify specific reports that would have provided the allegedly undisclosed information, who prepared them and when, how firm the numbers were and which company officers reviewed them in order to survive a motion to dismiss.  *Xerion Partners I*, 474 F. Supp. 2d at 516-517.  Plaintiff has not done so here.

The only other "support" for Plaintiff's assertions of scienter is also insufficient.  Plaintiff relies again on the September 19 press release, focusing on statements that the lower fourth quarter performance was due to "about $362,000 of late shipments due to manufacturing operational issues," and "one time charges of $341,000 due to glass yield issues, overtime for direct labor, travel for engineering and management to resolve issues."  Since "management" had to resolve or

---

[9] Plaintiff's reliance on the phrase "the last few months" is also unavailing, as it only relates to the timing of the workforce reduction and not Plaintiff's knowledge of its 4Q07 results.

address these issues before the close of the fourth quarter, argues Plaintiff, LightPath "had to be and was aware" of sufficient events that gave rise to a duty to disclose before the close of the quarter on June 30, and nearly two month before the audit was completed. (Am. Compl. ¶¶ 24-25).

However, nothing in the press releases suggests that Defendants knew how these issues would affect LightPath's fourth quarter performance before its preliminary financials were available in September. It simply does not follow that because LightPath made regular business decisions during the fourth quarter that it should also be held to know and disclose the financial effects of those decisions immediately, before the preliminary numbers for that quarter were even available. Such a result is plainly contrary to the purposes of the PSLRA.

     1.     There is a more plausible nonculpable explanation for Defendants' conduct.

Under *Tellabs*, courts now "*must consider plausible nonculpable explanations* for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 127 S.Ct. at 2510 (emphasis added). "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* Here, Plaintiff essentially makes conclusory allegations that Defendants knew or should have known LightPath's 4Q07 results two days before the quarter had even ended, and that less than a month after the quarter's close, LightPath had analyzed its 4Q07 results, *and* determined that it would terminate Brizel *and* made a decision to hide that fact for two more months. (Am. Compl. ¶¶ 22-30). In contrast, a more plausible nonculpable explanation for Defendants' conduct can be found in LightPath's September 19 and October 1 press releases: LightPath released its projected 4Q07 numbers on September 19, shortly after they were known; additionally, Brizel and LightPath determined – in September, not July – that effective September 18, Brizel would no longer be employed by LightPath. *See, e.g., In re Openwave Sys. Sec. Litig.,*

-15-

528 F. Supp.2d 236, 251 (S.D.N.Y. 2007) (no scienter where "[c]omplaint does not include a single

fact linking [CEO's] resignation to the alleged fraud or his knowledge thereof").

If a plaintiff is unable to show actual knowledge of falsity and an intent to mislead, a

plaintiff may establish the requisite "strong inference" either "(a) by alleging facts to show that

defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute

strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit*, 264 F.3d at 138;

*In re Salomon Analyst Winstar Litig.*, 02 Civ. 6171 (GEL), 2006 WL 510526, at *7 (S.D.N.Y. Feb.

28, 2006). Here, plaintiff has done neither; indeed, Plaintiff has failed to state with particularity *any*

facts that could give rise to a strong inference of fraudulent intent.

### 2.   Plaintiff has failed to plead any motive or opportunity to commit fraud.

Plaintiff fails to plead any facts showing that Brizel or anyone else at LightPath had any

motive or opportunity to commit fraud.[10] The purported "motive" for committing fraud was to raise

necessary capital for LightPath, and Brizel, Ripp and Dorothy Cipolla allegedly had the opportunity

to do so by virtue of their positions as CEO, Chairman and CFO respectively. (Am. Compl. ¶ 25,

39-40). The Second Circuit has held that allegations of motive must "entail concrete benefits that

could be realized by one or more of the false statements and wrongful nondisclosures alleged."

*Novak*, 216 F.3d at 307 (*quoting Shields*, 25 F.3d at 1130). Moreover, "motives possessed by

virtually all corporate insiders," including "the appearance of profitability" or "the desire to

maintain a high stock price in order to increase executive compensation" cannot be relied on to

establish scienter. *Id.* at 307-308 (citations omitted). Otherwise, "virtually every company in the

United States that experiences a downturn in stock price would be forced to defend securities fraud

actions." *San Leandro*, 75 F.3d at 814. Moreover, desiring to further corporate transactions to raise

---

[10] Plaintiff's failure to adequately allege motive and opportunity is fatal because Plaintiff has alleged no facts to support its conclusory assertion that Brizel's statements were "recklessly made." (Am. Compl. ¶ 60).

capital, such as the private placement here, cannot support a motive and opportunity to commit

fraud. *In re Regeneron Pharm.*, 03 Civ. 3111 (RWS), 2005 WL 225288, at *23 (S.D.N.Y. Feb. 1,

2005). Similarly, the position of CEO itself, without more, is an insufficient basis for finding an

opportunity to commit fraud. *See Openwave*, 528 F. Supp.2d at 251 ([P]laintiff has failed to plead

any motive or opportunity to commit the alleged fraud that is particular to Peterschmidt, and not

simply incident to his role as president, CEO, or director."); *Fadem v. Ford Motor Co.*, 352 F. Supp.

2d 501, 524 (S.D.N.Y. 2005) (requiring plaintiff to show that CEO received some concrete benefit

from the alleged fraud to establish motive and opportunity).

Merely alleging in conclusory fashion, as Plaintiff does here, that Defendants' "motive" was

to raise capital and that LightPath's officers and directors had "opportunity" via access to

unspecified "books and records," fails to raise a strong inference of fraudulent intent. Plaintiff has

alleged no particularized motive or concrete benefits that would be realized by the alleged

misstatements, nor has it alleged any opportunity particular to Defendants beyond that incident to

their respective positions. *See Garber v. Legg Mason, Inc.*, --- F. Supp.2d ---, No. 06 Civ. 9436

(DC), 2008 WL 697638 at *16 (S.D.N.Y., Mar. 17, 2008) ("generic, conclusory statement that

fraudulent intent existed is simply not enough to meet the heightened pleading standards for

securities fraud cases"). Plaintiff's pleading of this element is little more than a bald assertion that

LightPath wanted to commit fraud and that it could do so.

As discussed above, Plaintiff's Third, Fourth, Fifth and Sixth Causes of Action should be

dismissed. Essentially, Plaintiff claims – with no support whatsoever – that LightPath's public

statements on September 19 should have been made months earlier, before July 26, and thus any

omissions or conflicting statements before July 26 were materially misleading. *See Denny v.*

*Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (dismissing complaint because "plaintiff has simply

-17-

seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones").

II.    **IN ADDITION TO FAILING TO PLEAD A PRIMARY VIOLATION, PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(A) BECAUSE IT FAILS TO PLEAD CONTROL OF THE PRIMARY VIOLATOR AND CULPABLE PARTICIPATION**

In order to state a claim of control person liability under Section 20(a) of the Securities Exchange Act, Harborview must plead a primary securities fraud violation, control of the primary violator by the defendant (in this case, Ripp), and the control person's culpable participation in the underlying fraud. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996). In order to plead culpable participation, Harborview must plead, "at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness." *Lapin v. Goldman Sachs*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006). Here, Harborview has failed to plead any of the requisite elements of control person liability under Section 20(a).

As discussed above, Harborview has failed to plead a primary, underlying securities fraud violation. However, even assuming that it has, Plaintiff's "Ninth Cause of Action" – the only claim against Defendant Ripp – must be dismissed for failure to plead any of the other elements of Section 20(a) liability.

A.    **Harborview has failed to plead control of LightPath by Ripp**

In order to plead control, a plaintiff must plead facts that support a reasonable inference that the defendant "possessed the power to direct or cause the direction of the management and policies of a person." *In re Philip Serv. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 485 (S.D.N.Y. 2004) (citations omitted). The control alleged must be actual, amounting to more than mere influence, and also must include "'actual control over the transaction in question.'" *In re Alstom SA Sec. Litig.*, 406 F. Supp.2d 433, 487 (S.D.N.Y. 2005) (*quoting In re Global Crossing Ltd. Sec. Litig.*, 02 Civ.

-18-

910 (GEL), 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005)).

Plaintiff relies on Ripp's previous service as President and CEO of LightPath and his current position as Chairman of LightPath's Board to support its allegation that Ripp controlled LightPath. (Am. Compl. ¶ 88). Mere status as Chairman of the Board of Directors is simply insufficient to plead control. *Alstom*, 406 F. Supp.2d at 487 ("officer or director status alone does not constitute control for the purposes of Section 20(a) liability"); *Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315, 323 (S.D.N.Y. 1999) ("officer status alone is not enough to establish control person liability"). In light of case law holding that even current status as an officer is insufficient to plead control, Ripp's status as a former President and CEO hardly warrants discussion. If a current officer, without more, cannot be considered a control person, it defies logic to assume that a *former* officer, by his former status, should have more control over the company than its current officers.

Plaintiff also alleges that Ripp made statements during a September 18 telephone conversation that he "*had played* the lead role in terminating defendant Brizel's employment." (Am. Compl. ¶ 88; emphasis added.) As an initial matter, this allegation represents a departure from Plaintiff's original Complaint, where Plaintiff alleged that Ripp stated on that call that he "*was leading* the efforts*" to terminate Brizel's employment. (Compl. ¶ 72; emphasis added.) After Defendants identified this allegation in the initial motion to dismiss as an admission by Plaintiff that Brizel's departure was not determined until September, Plaintiff recharacterized the call with Ripp. Although a prior, inconsistent allegation is not a binding admission that is determinative on a Rule 12(b)(6) motion when an amended complaint has been filed, *Wesley v. Muhammad*, No. 05 Civ. 5833(GEL)(MHD), 2008 WL 123812 at *4 (S.D.N.Y. Jan. 10, 2008), it has also been held that "[t]he party seeking to amend a complaint to omit an allegation that defeats its claim for relief must present a legitimate explanation for its previous inclusion . . . ." *In re Enron Corp.*, 370 B.R. 583,

-19-

597-98 (Bankr. S.D.N.Y. 2007).  Plaintiff has failed to do so.[11]

Plaintiff also weakly offers allegations concerning Ripp's execution of Brizel's employment agreement and statements made by Ripp in the September 19 press release about the search for a new CEO.  (Am. Compl. ¶¶ 89-90).  Again, none of these allegations show that Ripp had the requisite control over LightPath as of July 26.  Even if Plaintiff's allegations generally supported an inference that Ripp's views would be considered seriously, none of Plaintiff's allegations are tied in any way to "actual control over the transaction in question," and cannot state a claim for control person liability. *Alstom*, 406 F. Supp.2d at 487 (Section 20(a) defendants must have actual control over transaction and primary violator).

**B.    Harborview has failed to plead any culpable participation by Ripp**

A plaintiff must also plead that the controlling person "was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." *SEC v. First Jersey*, 101 F.3d at 1472.  In order to satisfy the culpable participation pleading requirement, a "plaintiff may plead either conscious misbehavior or recklessness to satisfy the state of mind portion of the culpable participation element." *Steed Finance LDC v. Nomura Secs. Int'l, Inc.*, No. 00 CIV 8058 (NRB), 2001 WL 1111508, at *10 (S.D.N.Y. Sept. 20, 2001).  In short, "the Complaint must provide some detail about what [the controlling person] is alleged to have done – and when he did it – in order to hold that the complaint provides 'particularized facts' of culpable participation." *Mishkin v. Ageloff*, No. 97 Civ. 2690 (LAP), 1998 WL 651065 at *26 (S.D.N.Y. Sept. 23, 1998).  Plaintiff has done none of this.  Instead, Plaintiff offers only conclusory assertions that Ripp was aware and failed to disclose the material facts Plaintiff alleges were concealed from it.  (Am.

---

[11] In any event, even if Ripp played a lead role in the alleged termination of Brizel, this fact, without more, cannot support a finding that Ripp controlled LightPath generally or even that he controlled the private placement, as Plaintiff has not pled *any* involvement by Ripp in the specific transaction at all.

Compl. ¶¶ 92-93). Aside from these general, unsupported assertions, the Complaint simply makes no allegations of any acts by Ripp pertaining to Harborview on or before July 26.

Thus, Plaintiff's Ninth Cause of Action should be dismissed. Plaintiff's allegations against Ripp are so cursory that allowing them to proceed would be tantamount to allowing strict liability for officers and directors accused of 20(a) violations, directly contrary to well-settled case law. *See Ernst and Ernst*, 425 U.S. at 208-209 & n. 28 (suggesting that Congress intended that 20(a) liability should not attach for mere negligence); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973) (*en banc*) ("[T]he intent of Congress in adding . . .[20(a)] . . . was obviously to impose liability only on those directors who fall within its definition of control and who are in some meaningful sense culpable participants in the fraud.").

III.   **PLAINTIFF'S COMMON LAW FRAUD CLAIMS SHOULD BE DISMISSED**

Plaintiff's claim for common law fraud is premised on the same allegations made to support its Section 10(b) claim, (Am. Compl. ¶¶ 83-86), and thus the pleading defects that doom that claim mandate the dismissal of Plaintiff's common law fraud claim as well. To state a claim for common law fraud under New York law, "a plaintiff must show (1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff." *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 327 (S.D.N.Y. 2006).

"A claim for common law fraud brought under New York law must also satisfy the particularity requirements of Rule 9(b)." *Id.* Thus, it is well-established that "[t]he elements of common law fraud are, therefore, essentially the same as those which must be alleged in order to establish a claim under Section 10(b) and Rule 10b-5." *Id. See also Pilarczyk v. Morrison Knudsen Corp.*, 965 F. Supp. 311, 322 (N.D.N.Y. 1997) ("[T]he elements of fraud under New York law and

Section 10(b) essentially are the same, and since common law fraud also must be pleaded with particularity under Fed.R.Civ.P. 9(b), plaintiffs' common law fraud claims suffer from the same deficiencies as do their Section 10(b) claims and must therefore be dismissed.") (internal citations and quotations omitted); *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) ("Because the elements are substantially identical to those governing § 10(b), the identical analysis applies here."). Plaintiff's common law fraud claims must therefore be dismissed under the same analysis and for the same reasons set forth above with respect to Plaintiff's federal claims.

IV.    **PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF WARRANTY**

Finally, Plaintiff's claim for breach of warranty also fails as a matter of law. To state a claim for breach of warranty, Plaintiff must allege that "(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant." *See, e.g., LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortgage Lending*, No. 04 Civ. 5452 (PKL), 2007 WL 2324052, at *8 (S.D.N.Y. Aug. 13, 2007). Here, Harborview has failed to allege any facts showing that any warranty made by LightPath was breached, but again has made only conclusory allegations insufficient to state a claim. *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (citations omitted).

The general warranty in Section 3.1(i) of the Securities Purchase Agreement[12] states, in pertinent part, that:

---

[12] Plaintiff also seems to allege that the existence of a material adverse effect was a "willful violation of the Closing Conditions" of the Securities Purchase Agreement. To the extent this is an additional claim, it must fail because there was no material adverse effect at the time of closing.

> Since the date of the latest audited financial statements included
> within the SEC Reports, except as specifically disclosed in a
> subsequent SEC Report filed prior to the date hereof, (i) there has
> been no event, occurrence or development that has had or that could
> reasonably be expected to result in a Material Adverse Effect.

(Wang Decl. Ex.1 at 3.1(i)).  "Material Adverse Effect" is defined in Section 3.1(c) of the Securities

Purchase Agreement to include "a material adverse effect on the results of the operations, assets,

business or condition (financial or otherwise) *of the Company and the subsidiaries, taken as a*

*whole*." (Am. Compl. ¶ 46) (emphasis added).

Plaintiff relies on the same two "events" as a basis for its claim.  First, Plaintiff claims that

the warranty in Section 3.1(i) was breached by LightPath's "poor operational and financial

performance during its fourth fiscal quarter ending June 30, 2007." (Am. Compl. at ¶ 47(a)).

Alternatively, Plaintiff argues that the warranty was also breached by "the impending termination of

. . . Brizel . . . without the company having procured a replacement."  (Am. Compl. at ¶ 47(b)).  As

further discussed below, neither of these "events" is sufficient, as a matter of law, to support

Plaintiff's warranty claim.

First, with regard to LightPath's 4Q07 results, Plaintiff fails to allege any facts that would

establish that LightPath's "operational and financial performance" during that single quarter had

caused, by July 26, any material adverse effect on the company as a whole.  Plaintiff  only compares

LightPath's fiscal fourth quarter ending June 30, 2007 to the same quarter a year prior, (Am.

Compl. at ¶ 47(a)), but wholly ignores LightPath's overall performance for the fiscal year ending

June 30, 2007, which had improved by 10%.  (Wang Decl. Ex. 2).  Indeed, in the October 1, press

release also cited by Plaintiff, LightPath states that not only did revenues for fiscal year 2007

increase by 10%, but also that gross margin increased by $993,000, from 17% to 23%, and that

these factors, among others, combined to contribute to a lower net loss per share of $0.58 in 2007,

compared to $0.86 in 2006.  (Wang Decl. Ex. 3).  Thus, the mere fact that LightPath's performance

showed a decline for a single quarter as compared to the previous year's quarter is insufficient to

establish that there had been a "material adverse effect" on the company *as a whole*, particularly

where LightPath's fiscal year results had *improved* in 2007.  *See ABC Arbitrage Plaintiffs Group v.*

*Tchuruk*, 291 F.3d 336, 360 (5th Cir. 2002) (allegations of overstated financials in amount of 125

million French francs, "while a large absolute sum, is nonetheless insufficient as a matter of law to

materially affect Alcatel on a consolidated basis;" comparing specific negative financial results with

other, positive results); *see also In re IBP, Inc. Shareholders Litig.*, 789 A.2d 14, 68 (Del. Ch. 2001)

("short-term hiccup in earnings should not suffice;" in context of failed merger, materiality must be

"viewed from the longer-term perspective of a reasonable acquiror;" collecting cases).

Plaintiff's claim regarding Brizel's departure is similarly deficient.  Plaintiff cannot and has

not pled any facts that show LightPath had terminated Brizel before July 26.  Instead, Plaintiff relies

solely on conclusory allegations and conjecture to assert that Brizel was terminated by July 26,

despite the September 19 press release that states that Mr. Brizel's termination was effective

September 18.

Accordingly, Plaintiff has failed to plead any facts to suggest that there had been a material

adverse effect on LightPath as of July 26 and thus has failed to plead any breach of warranty.

Neither Brizel's departure nor LightPath's 4Q07 preliminary results were reported until September

19, nearly two months later, and Plaintiff has not alleged any facts to suggest that either of those

events had occurred or was known before July 26.  Moreover, even if one assumed that 4Q07

results should have been known by July 26 (or that LightPath should be strictly liable for its

financial results even before it publicly discloses those results), LightPath's performance for the

year was *up* compared to the year before, belying Harborview's claim that LightPath had suffered a

material adverse effect "on the results of the operations, assets, business or condition (financial or otherwise) of the Company and the subsidiaries, *taken as a whole*." (Am. Compl. ¶ 46) (emphasis added). Plaintiff's breach of warranty claim is meritless and should be dismissed.

## CONCLUSION

Plaintiff's fraud-based claims must fail because Plaintiff has failed to identify a single statement or omission that was materially misleading at the time it was made, and has failed to plead scienter. As a result, there is no primary violation to support Defendant Ripp's liability under Section 20(a), nor has Plaintiff pled the requisite control and culpable participation under this Circuit's law. Finally, in support of the breach of warranty claim, Plaintiff has pled only conclusory allegations that fail to suggest that any warranty was breached. Accordingly, Defendants respectfully request that this Court dismiss Plaintiff's complaint in its entirety.

Dated: March 28, 2008

BAKER & HOSTETLER LLP

By: _____
Ona T. Wang (OW-5462)
Benjamin Pergament (admission pending)
45 Rockefeller Plaza
New York, New York 10111
(212) 589-4200
(212) 589-4201 (fax)

*Attorneys for Defendants*